

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

**NO. 2-09-243-CR**

ANDREW DAVID NEWMAN                                    APPELLANT

V.

THE STATE OF TEXAS                                            STATE

------------

FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

In three points, appellant Andrew David Newman appeals his conviction for aggravated robbery, asserting that the trial court abused its discretion by denying his motion for mistrial, abused its discretion by admitting evidence of his prior convictions at punishment, and erred by overruling his objection to the State's comment on his failure to testify at punishment.  We will affirm.

------------

[1] *See* Tex. R. App. P. 47.4.

## II. FACTUAL AND PROCEDURAL BACKGROUND

One morning in September 2006, Lucia Milan was working as a cashier in her family's small convenience store, which was located across the street from her parents' house. Newman came into the store that morning, purchased a coke, and then left. He returned to the store about thirty minutes later, inquired about a public restroom, and left the store once again. Within the hour, Newman returned to the store a third time, walked behind the counter, and approached Milan. Newman produced a hammer from behind his back and began repeatedly hitting Milan over the head with it while telling her over and over, "Give me the money." Milan covered her head with her hands and told Newman she would give him the money, but Newman continued to hit her with the hammer even after she fell to the floor. Newman stopped hitting Milan and began climbing some shelves to reach a security camera, at which time Milan was able to escape the store and go across the street to her parents' house. A neighbor saw Milan limp out of the store, screaming and covered in blood, and then saw a man walk out of the store and calmly walk down the street with a hammer in his hand. No money or property was taken from the store.

Milan suffered numerous wounds to her head and hands, multiple broken bones in her left hand, and permanent tendon damage to her left hand. Milan later identified Newman as her assailant based on a photo lineup, and police arrested him. A jury found Newman guilty of aggravated robbery with a deadly weapon, and

after considering evidence of his prior convictions, assessed his punishment at ninety-nine years' confinement. The trial court sentenced him accordingly. This appeal followed.

### III. MOTION FOR MISTRIAL

In his first point, Newman argues that the trial court erred by denying his motion for mistrial after the prosecutor made a misstatement of the law during closing argument at the guilt-innocence phase of trial. The following transpired during the State's closing argument:

> [Prosecutor]: One of the other things the judge did mention to you is that there is a lesser-included offense of aggravated assault with a deadly weapon in this charge. We talked about it at the jury selection as well. One of the things I wanted to point out to you there is you don't get to that charge unless you've found him not guilty of aggravated robbery, that you consider aggravated robbery first and only if you are beyond a reasonable doubt unanimous that he's not guilty of aggravated robbery do you even consider the second charge of–
>
> [Defense Counsel]: I object. That is an incorrect statement of the law. . . . The jurors have been instructed if they have a reasonable doubt as to whether he's guilty of aggravated robbery, they must consider the lesser.
>
> [The Court]: I'll sustain.
>
> [Defense Counsel]: The prosecutor has implied they have to find him innocent.
>
> [The Court]: I'll sustain that particular objection. The jury has been properly instructed in the jury charge.
>
> [Defense Counsel]: I'm sorry. Move for mistrial.
>
> [The Court]: Denied.

3

The State agrees that the prosecutor misstated the law but contends that Newman was not entitled to a mistrial.

The trial court's denial of a motion for mistrial is reviewed under an abuse of discretion standard. *Hawkins v. State*, 135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004). An appellate court views the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of ruling. *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004). Under this standard, an appellate court must uphold a trial court's ruling if it was within the zone of reasonable disagreement. *Id.* A mistrial is appropriate only in extreme cases, where the prejudice is incurable and the "expenditure of further time and expense would be wasteful and futile." *Hawkins*, 135 S.W.3d at 77.

To determine whether the trial court abused its discretion by overruling a motion for mistrial, the appellate court must balance three factors: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's comment), (2) any curative measures taken (the effect of any cautionary instruction by the trial court), and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998), *cert. denied*, 526 U.S. 1070 (1999).

The jury is entitled to consider the charge as a whole and is not required to unanimously agree that a defendant is not guilty of the greater offense before considering the lesser-included offense. *Barrios v. State*, 283 S.W.3d 348, 349–50

4

(Tex. Crim. App. 2009). It is well established that the prosecutor cannot misstate the law. *See Whiting v. State*, 797 S.W.2d 45, 48 (Tex. Crim. App. 1990).

In the present case, we first consider the severity of the misconduct. The prosecutor's statement—although a misstatement of the law regarding when the jury can consider the lesser-included offense—occurred only once, and viewing the State's closing argument as a whole, we cannot conclude that "there was a willful and calculated effort on the part of the State to deprive [Newman] of a fair and impartial trial." *Brown v. State*, 270 S.W.3d 564, 573 (Tex. Crim. App. 2008) (considering whether State made willful and calculated error to deprive appellant of fair trial when analyzing severity-of-the-misconduct factor), *cert. denied*, 129 S. Ct. 2075 (2009).

Regarding the second factor—the curative measures taken—although Newman did not ask for an instruction to disregard, immediately after sustaining his objection, the trial court took curative action by stating, "The jury has been properly instructed in the jury charge." *See Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004) (noting that reversal not warranted when party requests mistrial without asking for instruction to disregard when event could have been cured by instruction). Moreover, the jury charge correctly set forth the law and instructed the jury, "Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the Defendant of aggravated robbery and next consider the lesser included offense of aggravated assault." *See Barrios*, 283 S.W.3d at 349–50

(approving of same charge); *Hawkins*, 135 S.W.3d at 84 (considering proper jury charge in analysis of curative-measures factor).

Finally, even without the misstatement of the law, the strength of the evidence supporting Newman's conviction was great. Newman argues that the evidence does not show that he appropriated any money to support conviction of the greater offense of aggravated robbery. But the State was not required to prove that Newman completed the theft; instead, the State needed to show only that Newman had the specific intent to commit theft and that he committed an act that amounted to more than mere preparation. *See* Tex. Penal Code Ann. §§ 29.01(1), .02(a), .03(a) (Vernon 2003); *Bustamante v. State*, 106 S.W.3d 738, 740 (Tex. Crim. App. 2003). Milan testified at trial that Newman had repeatedly beat her with a hammer while saying, "Give me the money." Following the robbery, Newman also told his girlfriend, Olivia Allen, that he had "attempted a robbery at a convenience store and had hit a lady repeatedly with a hammer." Allen also testified that Newman had explained that his "sole purpose" of going to the store was "to rob the store, to get the money." The jury saw security video footage of Newman pressing a button on the cash register in an attempt to obtain money. Newman's intent to commit robbery is thus evidenced by statements he made both during and after the robbery, and the security videotape demonstrates that Newman's actions amounted to more than mere preparation to commit theft. *See Bustamante*, 106 S.W.3d at 740.

Balancing the above factors, we hold that the trial court did not abuse its discretion by denying Newman's motion for mistrial.  *See Hawkins*, 135 S.W.3d at 77; *Mosley*, 983 S.W.2d at 259.  We overrule Newman's first point.

## IV. EVIDENCE OF PRIOR CONVICTIONS

In his second point, Newman argues that the trial court abused its discretion during the punishment phase of trial by admitting State's Exhibits 48 and 49—evidence of two of Newman's prior convictions—because the State did not sufficiently link those prior convictions to him.

An appellate court reviews a trial court's decision to admit evidence over objection under an abuse of discretion standard and will not reverse that decision absent a clear abuse of discretion.  *McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008); *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

To establish that the defendant was convicted of a prior offense for enhancement purposes, the State must (1) prove the existence of the conviction and (2) link the conviction to the defendant.  *Flowers v. State*, 220 S.W.3d 919, 921–22 (Tex. Crim. App. 2007); *Davis v. State*, 268 S.W.3d 683, 715 (Tex. App.—Fort Worth 2008, pet. ref'd).  No specific document or mode of proof is required to prove these two elements.  *Flowers*, 220 S.W.3d at 921; *Paschall v. State*, 285 S.W.3d 166, 174 (Tex. App.—Fort Worth 2009, pet. ref'd).

The State may establish a defendant's previous conviction through certified copies of a judgment and sentence.  *Beck v. State*, 719 S.W.2d 205, 209 (Tex. Crim.

App. 1986). However, the State must provide independent evidence linking these documents to the defendant on trial. *Id.* at 210. This is frequently done by expert testimony identifying known fingerprints of the defendant with the fingerprints in a pen packet, but the necessary proof may come from other means as well. *Id.* Courts have identified several other ways in which the link has been made, including (1) the defendant's admission or stipulation, (2) testimony by a person who was present when the person was convicted of the specified crime and can identify the defendant as that person, or (3) documentary proof (such as a judgment) that contains sufficient information to establish both the existence of a prior conviction and the defendant's identity as the person convicted. *Flowers*, 220 S.W.3d at 921–22; *Beck*, 719 S.W.2d at 209–10. The evidence used to link a prior crime to a defendant often "resembles a jigsaw puzzle." *Human v. State*, 749 S.W.2d 832, 835–36 (Tex. Crim. App. 1988). "The pieces standing alone usually have little meaning. However, when the pieces are fitted together, they usually form the picture of the person who committed the alleged prior conviction or convictions." *Id.* at 836.

Here, State's Exhibits 48 and 49 each consist of certified copies of a docket sheet, a misdemeanor complaint and information, and a judgment and sentence reflecting a prior conviction. Newman's unique Criminal Identification Number ("CID number") is located on the misdemeanor complaint and information and on the docket sheet in each exhibit, but the judgment in each exhibit does not contain his CID number. The fingerprints in both exhibits are illegible.

8

Newman specifically complains on appeal that, because the fingerprints in State's Exhibits 48 and 49 are illegible and because the judgments in both exhibits do not contain his unique CID number, the State failed to connect him to those prior convictions. However, the judgment in each exhibit contains the same named defendant, the same cause number, the same court, and the same charge as contained in the corresponding complaint and information and on the docket sheet, which do contain Newman's unique CID number. Additionally, the same information identifying Newman as the defendant in those exhibits is also contained in State's Exhibit 45—a pen packet evidencing another prior conviction. Fingerprint examiner John Pauley testified that fingerprints he took from Newman prior to trial matched the fingerprints contained in State's Exhibit 45. That exhibit lists the defendant's name as Andrew David Newman and contains Newman's physical description, date of birth, and physical address, all of which are also contained in State's Exhibits 48 and 49. State's Exhibit 45 also shows that Newman had a prior conviction for assault on a family member that occurred prior to December 1, 2003—the very same conviction that is reflected in State's Exhibit 48.

In the instant case, looking at all of the "pieces of the jigsaw puzzle," we hold that sufficient evidence linked Newman to the prior convictions in State's Exhibits 48 and 49. *Human*, 749 S.W.2d at 835–36; *see Flowers*, 220 S.W.3d at 223; *Dukes v. State*, No. 04-08-00678-CR, 2009 WL 1617665, at *1 (Tex. App.—San Antonio June 10, 2009, no pet.) (mem. op., not designated for publication) (holding that, although

9

fingerprint expert was unable to match fingerprints contained in exhibit to defendant's fingerprints, evidence sufficiently linked defendant when expert matched fingerprint on judgment contained in another exhibit with defendant's fingerprint and when defendant's name and CID number appeared in both exhibits); *Ortiz v. State*, No. 02-07-00397-CR, 2008 WL 4602243, at *2 (Tex. App.—Fort Worth Oct. 16, 2008, pet. ref'd) (mem. op., not designated for publication) (holding that State sufficiently linked defendant to prior conviction when his fingerprints matched those on jail card, which contained same CID number as that on indictment, although judgment did not contain CID number); *Nguyen v. State*, Nos. 13-02-00645-CR, 13-02-00646-CR, 2004 WL 1834404, at *3 (Tex. App.—Corpus Christi Aug. 12, 2004, no pet.) (mem. op., not designated for publication) (referring to appellant's unique SPN number as evidence linking appellant to prior convictions). Accordingly, we hold that the trial court did not abuse its discretion by admitting State's Exhibits 48 and 49 because the State sufficiently linked them to Newman. *See McCarty*, 257 S.W.3d at 239; *Moses*, 105 S.W.3d at 627. We overrule Newman's second point.

## V. NO COMMENT ON FAILURE TO TESTIFY

In his third point, Newman argues that the trial court erred by overruling his objection to the State's comment on his failure to testify during the punishment phase of his trial. Specifically, Newman complains that the State's questioning of Dr. James Womack improperly referred to Newman's lack of remorse and constituted a comment on his failure to testify.

10

During the State's cross examination of Dr. Womack, Dr. Womack discussed the characteristics of antisocial personality disorder and concluded that Newman had all but one of the characteristics of that disorder; he could not say for certain whether Newman met the final characteristic—indifference to hurting and mistreating others. The following exchange then occurred:

[Prosecutor]: You're aware that the assault in this case was committed with a hammer, correct?

[Dr. Womack]: Yes

[Prosecutor]: Now let me show you what is marked State's Exhibit 18. Are you aware that this is the hammer used to commit the assault?

[Dr. Womack]: If it's been proven, I'll accept that, yeah.

[Prosecutor]: Now, let me show you some photographs, State's Exhibits 24, 28, 27. And I'm going to represent to you the white shards there are bone.

[Dr. Womack]: Looks like bone, doesn't it?

[Prosecutor]: Yes. Twenty-six you see an injury to the temple area there?

[Dr. Womack]: Severe separation.

[Prosecutor]: And you can't tell much because of the hair, but State's Exhibit 25—

[Dr. Womack]: Yes.

[Prosecutor]: Would you agree with me that if a person's capable of inflicting that kind of harm on a human being and then walking away at an even pace, absolutely expressionless, and leaving that person to whatever their fate may be, that shows a certain lack of remorse for—

11

[Defense Counsel]: Objection. Comment on failure to testify, Your Honor.

[Prosecutor]: I'm asking about conduct, Your Honor.

[Defense Counsel]: Objection. Comment on failure to testify.

[The Court]: I'm going to overrule the objection at this time.

[Prosecutor]: Would you say the pattern of behavior or conduct I'm describing to you shows a certain lack of remorse or indifference to hurting or mistreating others?

The code of criminal procedure provides that a defendant's failure to testify on his own behalf may not be held against him and that counsel may not allude to the defendant's failure to testify. Tex. Code Crim. Proc. Ann. art. 38.08 (Vernon 2005). To determine whether a prosecutor's comment violated article 38.08 and constituted an impermissible reference to an accused's failure to testify, we must decide whether the language used was manifestly intended or was of such a character that the jury naturally and necessarily would have considered it to be a comment on the defendant's failure to testify. *Id.*; *see Bustamante*, 48 S.W.3d at 765; *Fuentes v. State*, 991 S.W.2d 267, 275 (Tex. Crim. App.), *cert. denied*, 528 U.S. 1026 (1999). The offending language must be viewed from the jury's standpoint, and the implication that the comment referred to the accused's failure to testify must be clear. *Bustamante*, 48 S.W.3d 765; *Swallow v. State*, 829 S.W.2d 223, 225 (Tex. Crim. App. 1992). A mere indirect or implied allusion to the defendant's failure to testify does not violate the accused's right to remain silent. *Wead*, 129 S.W.3d at

12

130; *Patrick v. State*, 906 S.W.2d 481, 490–91 (Tex. Crim. App. 1995), *cert. denied*, 517 U.S. 1106 (1996).

Generally, a prosecutor may not argue that the accused has not shown remorse or shame because this calls the jury's attention to the absence of testimony that only the accused can supply. *Swallow*, 829 S.W.2d at 225–26; *Dickinson v. State*, 685 S.W.2d 320, 323 (Tex. Crim. App. 1984). However, an exception to the general rule applies if there is evidence in the record that supports a comment regarding the defendant's failure to show remorse; in that case, the comment is a proper summation of the evidence. *Howard v. State*, 153 S.W.3d 382, 385–86 (Tex. Crim. App. 2004) (holding that State's argument was proper summation of evidence when evidence showed defendant had told officer that he had no remorse), *cert. denied*, 546 U.S. 1214 (2006); *Caldwell v. State*, 818 S.W.2d 790, 800 (Tex. Crim. App. 1991) (explaining that jury could have interpreted State's comment on lack of remorse as reference to witness's testimony of defendant's "calm demeanor" after murder), *cert. denied*, 503 U.S. 990 (1992), *overruled on other grounds by Castillo v. State*, 913 S.W.2d 529 (Tex. Crim. App. 1995). Witnesses may testify as to the defendant's statements and conduct indicating a lack of remorse. *Oliva v. State*, 942 S.W.2d 727, 734 n.2 (Tex. App.—Houston [14th Dist.] 1997), *pet. dism'd*, 991 S.W.2d 803 (Tex. Crim. App. 1998).

In the present case, the State was simply asking an expert witness whether, in his opinion, Newman's conduct indicated a lack of remorse and was therefore

13

consistent with the characteristics of antisocial personality disorder. Prior to Dr. Womack's testimony, an eyewitness testified that she had seen Newman walk out of the store at a calm pace while carrying a hammer and that his face was expressionless. The State was drawing on this prior testimony to question Dr. Womack about a characteristic of antisocial personality disorder by asking him whether such actions would show a lack of remorse. We hold that the prosecutor's question to Dr. Womack was not manifestly intended nor was of such a character that the jury naturally and necessarily would have considered it to be a comment on Newman's failure to testify. *See Bustamante*, 48 S.W.3d at 765; *see also Ladd v. State*, 3 S.W.3d 547, 569 (Tex. Crim. App. 1999) (holding jury could have interpreted State's comment on lack of remorse as referring to psychiatrist's testimony that appellant had anti-social personality disorder and had no remorse for his crimes), *cert. denied*, 529 U.S. 1070 (2000); *Fearance v. State*, 771 S.W.2d 486, 514 (Tex. Crim. App. 1988) (holding State's argument was not a comment on failure to testify but rather a summation of the evidence provided by a psychiatrist that personalities like appellant's show no remorse), *cert. denied*, 492 U.S. 927 (1989). Accordingly, we hold that the trial court did not err by overruling Newman's objection to the complained-of comment. We overrule Newman's third point.

14

## VI. CONCLUSION

Having overruled Newman's three points, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL: DAUPHINOT, WALKER, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: July 1, 2010