**Opinion issued June 21, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-11-00188-CR

—————————————

**TONY ORLANDO MYLES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 178th District Court
Harris County, Texas
Trial Court Case No. 1223475

**MEMORANDUM OPINION**

Tony Orlando Myles appeals his conviction for aggravated sexual assault of

a child.  *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(iii), (a)(2)(B) (West Supp.

2011).  Myles was charged by indictment and pleaded not guilty to the offense.  A

jury found him guilty and assessed his punishment at confinement for twenty-two years and a fine of $7,500.00. In three points of error, Myles contends that the trial court erred by excluding the videotaped interview of the complainant's forensic interview and testimony from the investigating officer and that the State made impermissible jury arguments. We affirm.

## Background

The complainant, D.W., has been diagnosed with moderate mental retardation. In August 2004, D.W.'s mother, L.W., had a stroke and, unable to care for D.W., asked for Children's Protective Services to place D.W. in a foster home. After she regained custody in 2006, L.W. noticed D.W. behaving in ways he previously had not. D.W. was portraying sexual behavior, "flashing" his sisters and others. He also urinated on himself and smeared feces on himself and the walls.

Because of this behavior, L.W. took D.W. to therapy. After two years of therapy, L.W. was informed of an allegation D.W. had made against Myles. In late 2008, she informed the police and placed D.W. in therapy with Dr. Wells, a licensed counselor and licensed sex offender treatment provider. Dr. Wells treated D.W. for over two years, until the time of trial. D.W. told Dr. Wells that Myles had placed his mouth on D.W.'s penis and had penetrated D.W.'s anus on at least two occasions.

At trial, D.W. testified that Myles placed his mouth on D.W.'s "privacy part," the term D.W. used to describe the male sexual organ. Officer Garcia, an investigator in the crimes against children section of the Children's Assessment Center, testified that he first interviewed L.W. and D.W. after L.W. passed the information from D.W.'s therapist to police. Garcia testified that during his investigation he determined that the incident D.W. described occurred around May 1, 2004, when D.W. was 12 years old. During trial, Myles attempted to reveal inconsistencies in D.W.'s allegations and show that D.W.'s allegations had been suggested to him by improper leading questioning of D.W. by the forensic interviewer.

## Exclusion of Evidence

In his first point of error, Myles contends that the trial court erred by excluding the video recording of the forensic interview of D.W., which Myles intended to use to impeach the forensic interviewer's trial testimony. The interviewer testified at trial that forensic interviews of children who have possibly been sexually assaulted should be conducted with open-ended questions, not leading questions. She also testified that she did not use leading questions in the interview of D.W. Myles made two attempts to impeach her testimony by showing that, in fact, she did use leading questions. He first sought to introduce such evidence by asking Garcia, who watched the recorded interview, whether the

interviewer asked D.W. leading questions during the interview. He then attempted to introduce the recording.

## A. Garcia's Opinion

During cross-examination of Officer Garcia, Myles established that Officer Garcia had watched the recorded interview. Myles then asked Officer Garcia whether, in his opinion, the interviewer used leading questions. Before Officer Garcia answered, the State objected, and the trial court sustained the objection.

"Error may not be predicated upon a ruling which . . . excludes evidence unless a substantial right of the party is affected, and . . . the substance of the evidence was made known to the court by offer, or was apparent from the context within which questions were asked." TEX. R. EVID. 103(a)(2); *Holmes v. State*, 323 S.W.3d 163, 168 (Tex. Crim. App. 2009). "The primary purpose of the offer of proof is to enable an appellate court to determine whether the exclusion was erroneous and harmful." *Holmes*, 323 S.W.3d at 168. Error in the exclusion of evidence may also be preserved by a bill of exception. TEX. R. APP. P. 33.2; *see Guidry v. State*, 9 S.W.3d 133, 153 (Tex. Crim. App. 1999) ("Error in the exclusion of evidence may not be urged unless the proponent perfected an offer of proof or a bill of exceptions."). In this case, Myles made no offer of proof or bill of exception concerning Garcia's answer about whether the interviewer used leading questions. Because the record does not contain the substance of Officer

4

Garcia's excluded testimony, we cannot examine it to determine whether the exclusion was erroneous or harmful. *See Holmes*, 323 S.W.3d at 168. Myles has not preserved this issue for appeal. *See* TEX. R. EVID. 103(a)(2); *Holmes*, 323 S.W.3d at 168; *cf. Edwards v. State*, 178 S.W.3d 139, 146 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (holding error preserved when witness answered before State objected, so excluded testimony was contained in the record).

## B.     Video Recording of the Interview

Myles also attempted to introduce the recording of D.W.'s interview into evidence to impeach the interviewer. The State objected on hearsay grounds and because playing the entire recording was "improper impeachment." The trial court sustained the hearsay objection and stated, "To show the tape to demonstrate all that [i.e., that the questions were leading] is one thing. You can offer parts of it for impeachment. Other than that, I don't see how you're going to be able to do that." The parties and the trial court continued to discuss the admissibility of the recorded interview. The State explained the basis of its objection as follows:

> Your Honor, she was asked if she had used leading questions and she said no. She was not asked about any specifics.
>
> Of a 40-minute interview, he has not pointed out any specific leading question to ask her if, in fact, that was leading or give her the opportunity to admit, explain, or deny. That was just a general question of the overall interview of 40 minutes worth of an interview.
>
> . . . .

5

> At this point, the grounds have not even been laid for proper impeachment and the video is full of hearsay from the complainant, basically, telling her his version of what happened.
>
> . . . .
>
> I mean, all of his statements would need to be redacted out so you could just hear her questions and she has not yet been asked about any specific question that she may have asked in that interview.

Myles responded that he asked the interviewer whether she had used leading questions and she denied doing so. The trial court sustained the State's objection.

"When a trial judge is presented with a proffer of evidence containing both admissible and inadmissible statements and the proponent of the evidence fails to segregate and specifically offer the admissible statements, the trial court may properly exclude all of the statements." *Willover v. State*, 70 S.W.3d 841, 847 (Tex. Crim. App. 2002). In *Willover*, the appellant sought to admit into evidence the recording of two interviews of the complainant by a child abuse specialist for impeachment purposes, but the tapes contained hearsay. *Id.* at 846. The trial court told the appellant, "[Y]ou can't show the tape in its entirety," but the appellant offered the entire video. *Id.* Because the appellant had not attempted to segregate the admissible portions from the inadmissible ones, the Court of Criminal Appeals held that the trial court did not err by excluding the recording. *Id.* at 847. Similarly, here, Myles sought to admit the entire recording of D.W.'s interviews even though D.W.'s responses were inadmissible hearsay. The State and the trial

6

court both indicated that the entire recording could not be admitted, but Myles did not segregate the admissible portions of the recording from the inadmissible portions. The trial court, therefore, did not err by excluding the recording. *See id.*; *see also Sohail v. State*, 264 S.W.3d 251, 261 (Tex. App.—Houston[1st Dist.] 2008, pet. ref'd) (trial court did not abuse its discretion in excluding documents and audio tape that contained inadmissible hearsay and extraneous information when appellant offered entire documents and tape rather than properly redacted versions that contained only admissible evidence).

We overrule Myles's first point of error.

## Exclusion of Opinion Testimony

In his second point of error, Myles contends that the trial court erred by excluding opinion testimony from Officer Garcia. Myles asked Officer Garcia if he had ever told L.W. that, in his opinion, it was "extremely difficult to get a conviction in a sexual assault case for somebody that suffers from mental retardation." The State objected, stating, "That really invades the province of the jury and it's an inappropriate question." The trial court sustained that objection. Immediately afterwards, the trial court recessed the jury, and the parties discussed the admissibility of the testimony with the trial court. During this discussion, the State raised additional objections: that Officer Garcia's out-of-court statement was

7

hearsay and that his opinion on the difficulty of obtaining a conviction was irrelevant. The following exchange then occurred:

> The Court: Okay. How is it relevant to an issue in the case or could be relevant?
>
> [Myles's counsel]: Well, the relevance, of course, is in the context of what his opinion is and that is that it is difficult to obtain a conviction when the complainant is mentally retarded and in this case there is more. He's got some more physical problems than just that. But suffice to say, mentally retarded, and I think that is exactly what he said. I don't think he included any other problems.
>
> The Court: Thank you very much. At this time the objection is sustained, State's objection.

On appeal, Myles contends that the trial court erred because "invades the province of the jury" is not a valid objection. *See Peters v. State*, 31 S.W.3d 704, 712 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (stating that "invading the province of the jury" is not a valid objection to opinion testimony) (citing TEX. R. EVID. 704; *Ortiz v. State*, 834 S.W.2d 343, 348 (Tex. Crim. App.1992)). The State concedes this point, but argues that Myles has not addressed the relevancy objection on appeal and did not identify the relevance of Officer Garcia's testimony at trial.

Rule 401 of the Texas Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. The Court of Criminal

8

appeals has stated, "[E]vidence merely tending to affect the probability of the truth or falsity of a fact in issue is logically relevant." *Mendiola v. State*, 21 S.W.3d 282, 284 (Tex. Crim. App. 2000) (quoting *Montgomery v. State*, 810 S.W.2d 372, 376 (Tex. Crim. App. 1990)). "Evidence need not by itself prove or disprove a particular fact to be relevant; it is sufficient if the evidence provides a small nudge toward proving or disproving some fact of consequence." *Stewart v. State,* 129 S.W.3d 93, 96 (Tex. Crim. App. 2004). In determining whether evidence is relevant, courts should examine the purpose for which the evidence is being introduced. *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009). "It is critical that there is a direct or logical connection between the actual evidence and the proposition sought to be proved." *Id.* "Evidence which is not relevant is inadmissible." TEX. R. EVID. 402; *see also Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012) ("A bedrock condition of admissibility of evidence in any legal contest is its relevance to an issue in the case—that is to say, its tendency to make a fact of consequence to determination of the action more or less probable.").

Officer Garcia's opinion on the difficulty of obtaining a conviction when the victim of a sexual assault suffers from mental impairments does not make any of the facts the jury had to determine more probable or less probable, nor does it provide a nudge towards proving or disproving any material fact. The jury was not asked to determine whether these types of cases were hard to prove. The jury was

9

asked whether, in this case, Myles sexually assaulted D.W. Specifically, the jury charge asked the jury to determine whether Myles "intentionally or knowingly cause[d] the sexual organ of [D.W.], a person younger than fourteen years of age and not the spouse of the defendant, to penetrate the mouth of Tony Orlando Myles . . . ." Officer Garcia's opinion concerning the difficulty of prosecuting a case like this one is not relevant. Because the evidence is not relevant, it is not admissible. *See* TEX. R. EVID. 402; *see also Jordan* v. *State*, 928 S.W.2d 550, 555 (Tex. Crim. App. 1996) ("Expert testimony that does not relate to a fact in issue is not helpful. This consideration is what the Supreme Court referred to as the 'fit' requirement. That is, the proffered testimony must be 'sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.'").

We overrule Myles's second point of error.

### Improper Argument

In his third point of error, Myles contends that the State made improper jury arguments.

Proper jury argument includes (1) summation of the evidence, (2) reasonable deductions from the evidence, (3) responses to argument by defense counsel, and (4) pleas for law enforcement. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000); *Carmen v. State*, 358 S.W.3d 285, 300 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). "Before a defendant will be permitted to complain on

10

appeal about an erroneous jury argument or that an instruction to disregard could not have cured an erroneous jury argument, he will have to show he objected and pursued his objection to an adverse ruling." *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996), *cited in Threadgill v. State*, 146 S.W.3d 654, 667 (Tex. Crim. App. 2004). "[A] defendant's failure to object to a jury argument . . . forfeits his right to complain about the argument on appeal." *Cockrell*, 933 S.W.2d at 89. Even if a defendant objects to an improper argument once, failure to object to other instances of the same or similar arguments will result in an appellate court finding that the trial court's error, if any, in failing to sustain the objection is harmless. *Howard v. State*, 153 S.W.3d 382, 385 (Tex. Crim. App. 2004).

Here, Myles objected to the following argument:

> Now, he made a comment about how you didn't get to see a video or didn't get to hear a statement, [D.W.] testified in front of you. And part of the rules of evidence deal with inconsistent statements. You heard from his mother who testified before you, too. If they had made inconsistent statements or said something contrary to what they testified to in this courtroom today, you absolutely would have been presented with a video or an investigator who spoke to them saying, "Uh-huh, no, that's not what they said." You would have been able to see all of that.[D.W.'s] testimony before you yesterday is consistent with what he told that forensic interviewer back in June of 2009, and it's consistent with the full disclosure –

Myles, however, did *not* object to these arguments:

> You heard from [D.W.]. And don't you know that if he had been inconsistent as to any material fact you would have heard about that, too. Don't you know if his mother had been inconsistent as to what

11

she testified to in this courtroom, you would have heard about that, too. A question asked by an attorney is not evidence.

. . . .

After that, he then has a meeting with [the forensic interviewer] in June of 2009 at this Children's Assessment Center. And then he came down here to Court and painfully testified before you.

And again, had he been inconsistent you would have heard it. That would have been evidence that would have been put before you.

Because the jury heard the same argument about the lack of inconsistency of D.W.'s allegations without objection, the error, if any, in overruling Myles's objection is harmless. *See Howard*, 153 S.W.3d at 385; *see also Longoria v. State*, 154 S.W.3d 747, 766 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) ("Where the objected-to argument is repeated without objection, no reversible error exists.") (citing *McFarland v. State*, 845 S.W.2d 824, 840 (Tex. Crim. App. 1992)).

Myles also contends that the State argued outside the evidence when it stated the following:

[D.W.] goes into CPS custody, which I find it funny that the whole premise, you know, he's making it up to help mom when she voluntarily calls CPS from the hospital and says, "Take him, I can't handle him, I can't care for him, I'm sick."

Myles objected that the State was "mentioning things that absolutely are not in evidence." The trial court "[s]ustained in part, [and] overruled in part" the objection.

12

On appeal, Myles asserts that this argument was an example of the State's "clearly going outside the record," but does not identify which portion of the statement is outside the record. As noted above, proper argument includes summation of the evidence, and responses to argument by defense counsel. *Wesbrook*, 29 S.W.3d at 115; *see also Swarb v. State*, 125 S.W.3d 672, 686 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd) ("We consider challenged jury argument in its context and grant counsel wide latitude in drawing inferences from the evidence.") (citing *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988)). L.W. testified that she had a stroke in August of 2004, as a result of the stroke, she was unable to care for D.W., and she called CPS to place D.W. in foster care. Immediately after the trial court sustained in part and overruled in part the objection, the State continued, "You'll recall the testimony of [L.W.]. You'll recall that she told you about when she had her stroke, when she went to the hospital, and how it came to be that [D.W.] went into CPS custody." Because Myles does not identify the portion of the argument that is outside of the record, and because the testimony at trial was substantially similar to the State's statements during argument, we conclude that the State's argument was a summation of the evidence. *See Wesbrook*, 29 S.W.3d at 115; *see also Swarb*, 125 S.W.3d at 686 (holding statement that defendant had delivered controlled substance to jail was proper summation of and reasonable deduction from evidence

13

where evidence included arrest warrant for delivery of controlled substance to jail and officer's testimony that witness had told officer defendant had delivered controlled substance). Accordingly, we hold that this argument was not improper. *See Wesbrook*, 29 S.W.3d at 115.

We overrule Myles's third point of error.

## Conclusion

We affirm the judgment of the trial court.


Rebeca Huddle
Justice

Panel consists of Justices Higley, Sharp, and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).