

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-15-00357-CR

———————————————

DONDRE JOHNSON, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from Criminal District Court No. 1
Tarrant County, Texas
Trial Court No. 1415600R

---

Before Birdwell, Bassel, and Womack, JJ.[1]
Memorandum Opinion on Remand by Justice Bassel

---

[1]A new panel has been substituted on remand because all of the justices from the previous panel have retired.

## MEMORANDUM OPINION ON REMAND

## I. INTRODUCTION

A jury convicted Appellant Dondre Johnson of two counts of theft of money between $1,500 and $20,000 and assessed his punishment at two years' confinement in state jail and a $10,000 fine for each count. *See* Act of May 27, 2015, 84th Leg., R.S., ch. 1251, § 10, 2015 Tex. Sess. Law Serv. 4209, 4212 (current version at Tex. Penal Code Ann. § 31.03(e)(4)(A)). Appellant raised four points on appeal, but because we sustained Appellant's first point in which he challenged the sufficiency of the evidence supporting his convictions, we reversed the trial court's judgment and rendered a verdict of acquittal on both counts without reaching the remaining three points. *See Johnson v. State (Johnson I)*, 513 S.W.3d 190, 201 (Tex. App.—Fort Worth 2016) ("Having held the evidence insufficient to support Appellant's convictions on both counts, we sustain his first point, which is dispositive of the entire case. We therefore do not address his remaining points."), *rev'd*, 560 S.W.3d 224 (Tex. Crim. App. 2018).

The court of criminal appeals disagreed with our application of the standard of review, reversed our judgment, and remanded the case with instructions for us to consider Appellant's remaining three points that were not addressed in *Johnson I*. *Johnson v. State (Johnson II)*, 560 S.W.3d 224, 226 (Tex. Crim. App. 2018). Therefore, although they were originally identified as Appellant's second, third, and fourth points, because the court of criminal appeals has already overruled Appellant's first point challenging

the sufficiency of the evidence, we will address Appellant's remaining points on remand as points one, two, and three.[2]

We affirm the judgments as modified.

## II. DID THE STATE IMPROPERLY COMMENT ON APPELLANT'S SILENCE?

In his first point, Appellant argues that the trial court erred when it overruled his objection to the prosecutor's comment on Appellant's refusal to take responsibility, which Appellant contends was an improper reference to his exercise of his Fifth Amendment right not to testify. *See* U.S. Const. amend. V; Tex. Code of Crim. Proc. Ann. art. 38.08. The State disagrees that the prosecutor's comment about Appellant's refusal to take responsibility even implicated his decision not to testify but alternatively argues that even if the comment did, any such error is not reversible. We conclude that the prosecutor's comment was in reference to Appellant's statements in two recorded interviews that were played for the jury, and thus, the comment was not an improper reference to his decision not to testify. Further, any error created by the argument was harmless.

### A. Standard of Review and Applicable Law

We review a trial court's ruling on an objection to improper jury argument for an abuse of discretion. *Rodriguez v. State*, 446 S.W.3d 520, 536 (Tex. App.—San Antonio

---

[2]We also adopt the recitation of the background facts already set forth in *Johnson I*, 513 S.W.3d at 192–94.

2014, no pet.) (op. on reh'g). "Such argument does not result in reversal 'unless, in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceeding.'" *Id.* (quoting *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000)). "The remarks must have been a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial." *Wesbrook*, 29 S.W.3d at 115.

A court may not hold a defendant's failure to testify against him, and counsel may not allude to a defendant's failure to testify. U.S. Const. amend. V; Tex. Const. art. I, § 10; Tex. Code Crim. Proc. Ann. art. 38.08. To determine if a prosecutor's comment violated article 38.08 and impermissibly referred to an accused's failure to testify, we must decide whether the language used was plainly intended or was of such a character that the jury naturally and necessarily would have considered it to be a comment on the defendant's failure to testify. *See* Tex. Code Crim. Proc. Ann. art. 38.08; *Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001); *Fuentes v. State*, 991 S.W.2d 267, 275 (Tex. Crim. App. 1999). We must view the offending language from the jury's standpoint, and the implication that the comment referred to the accused's failure to testify must be clear. *Randolph v. State*, 353 S.W.3d 887, 891 (Tex. Crim. App. 2011); *Bustamante*, 48 S.W.3d at 765. A merely indirect or implied allusion to the defendant's failure to testify does not violate the accused's right to remain silent. *Wead v. State*, 129 S.W.3d 126, 130 (Tex. Crim. App. 2004); *Patrick v. State*, 906 S.W.2d 481, 490–91 (Tex. Crim. App. 1995).

4

But when the remark calls the jury's attention to the absence of evidence that only a defendant's testimony could supply, it is impermissible. *See Garrett v. State*, 632 S.W.2d 350, 353 (Tex. Crim. App. [Panel Op.] 1982). A comment by a prosecutor on a defendant's refusal to take responsibility may be a comment on his failure to testify. *See Roberson v. State*, 100 S.W.3d 36, 40–41 (Tex. App.—Waco 2002, pet. ref'd). However, if there is evidence in the record supporting the comment, then no error is shown. *Howard v. State*, 153 S.W.3d 382, 386 (Tex. Crim. App. 2005) (citing *Fearance v. State*, 771 S.W.2d 486, 514 (Tex. Crim. App. 1988)).

### B. The Comment, Objection, and Ruling

The comment Appellant complains of occurred during the State's closing argument:

> [PROSECUTOR]: . . . . You can't sit there and point the finger at Rachel Hardy or point the finger at John Nganga or Jonathan Mitchell or Willie Marble. I mean, you heard name after name after name, *but you never heard Mr. Johnson taking responsibility for taking that money, for giving the wrong ashes --*
>
> [APPELLANT'S TRIAL COUNSEL]: Objection, Your Honor.
>
> [PROSECUTOR]: *-- and for lying.*
>
> [APPELLANT'S TRIAL COUNSEL]: He's alluding to Mr. Johnson's failure to testify.
>
> THE COURT: That's overruled. [Emphasis added.]

### C. No Abuse of Discretion

Here, the prosecutor's statement about Appellant's failure to take responsibility was in reference to two recorded interviews with detectives, which were introduced at

5

trial. According to the State's theory, the interviews showed Appellant shift from initially taking responsibility for transportation of the bodies and other operations of the funeral home, to passing off responsibility to other specific individuals and downplaying his role. One of the detectives testified that the interviews demonstrated Appellant trying to "distance himself" from responsibility at the funeral home:

> [PROSECUTOR]. All right. The -- in the first statement, is [Appellant] -- the first one we listened to, is [Appellant] stating that he's doing the transportation 99 percent of the transportation?
>
> [DETECTIVE]. Yes, sir, I believe he said if you request Johnson, you're going to get Johnson. I believe is how he qualifies that.
>
> [PROSECUTOR]. Okay. And as we start going through this second -- we're about 14 minutes in, does the story seem to start changing?
>
> [DETECTIVE]. It looks like to me he's starting to distance himself. He's starting to mitigate his role there, and I think that becomes clear because he starts throwing in other people. There's an order of progression there that you can see between those first and second interviews.
>
> [PROSECUTOR]. And is that something you see commonly in your investigation?
>
> [DETECTIVE]. Absolutely, every time.
>
> [PROSECUTOR]. The -- was this the first time you heard John Nganga's name?
>
> [DETECTIVE]. It is.
>
> [PROSECUTOR]. Okay. What about Willie Marble? Had you heard Willie Marble's name before?
>
> [DETECTIVE]. I had not heard his name either.

Indeed, earlier in closing argument, the prosecutor specifically referenced Appellant's "own words" and listening to his statement as the best indication that Appellant had no intention of fulfilling his agreement (which is another way of saying Appellant was not taking responsibility):

> [PROSECUTOR]: . . . . *And the best evidence of all is his own words.*
>
> *When you listen to his statement*, he knows those bodies are there. He knows those people have not been cremated, except for [one person]. He forgot about him. But all the other people, he knows they're there. That's the best evidence that he never intended to fulfill his agreement. [Emphasis added.]

And when the prosecutor commented on Appellant's failure to take responsibility, he mentioned several specific individuals and reminded the jury that "you heard name after name after name, but you never heard Mr. Johnson taking responsibility for taking that money," which only makes sense if it was in reference to Appellant's recorded interviews, in which he mentioned the individuals.

Finally, the comment was in response to Appellant's trial counsel's closing argument in which he repeatedly emphasized Appellant's trial theme that he was merely an employee of the funeral home and as such was not responsible for any missing funds.

Thus, there was evidence in the record—namely, the detective's testimony and the two recorded interviews with Appellant's own words—to support that Appellant was attempting to avoid taking responsibility for his role at the funeral home. Viewed from the jury's standpoint, we do not believe that the prosecutor's comment in closing argument that "you heard name after name after name, but you never heard

7

Mr. Johnson taking responsibility for taking that money, for giving the wrong ashes[,] . . . and for lying" was a comment on Appellant's failure to testify. Rather, it was a reference to Appellant's statements in the recorded interviews and the detective's testimony—a proper summation of evidence presented to the jury. That is, the jurors would have considered the statement a reference to the recorded interviews and not to Appellant's decision not to testify. Therefore, we hold that the trial court did not abuse its discretion in overruling Appellant's objection. *See Cruz v. State*, 225 S.W.3d 546, 549–50 (Tex. Crim. App. 2007) (holding prosecutor's statement was not an improper comment about the appellant's failure to testify when "it [was] clear from the record that the prosecutor's statements to the jury referred to the appellant's own written statement which had been admitted into evidence"); *Howard*, 153 S.W.3d at 386 (concluding prosecutor's argument that the defendant failed to show remorse was not an improper comment on the defendant's failure to testify but a "proper summation of the evidence" when one witness had testified that the defendant told him he had no remorse).

### D. Any Error Was Harmless

However, even assuming *arguendo* that the trial court abused its discretion by overruling Appellant's objection to the prosecutor's comment about Appellant's failure to take responsibility, we conclude that any such error is harmless.

A prosecutorial comment that impinges upon a defendant's privilege against self-incrimination is an error of constitutional magnitude and must be analyzed under rule

44.2(a) of the rules of appellate procedure. *See* Tex. R. App. P. 44.2(a); *Snowden v. State*, 353 S.W.3d 815, 818 (Tex. Crim. App. 2011). When confronted with such an error, we must reverse unless we conclude beyond a reasonable doubt that the error did not contribute to the appellant's conviction. *Snowden*, 353 S.W.3d at 818, 822 (citing Tex. R. App. P. 44.2(a)). Our focus is on the error itself in the context of the trial as a whole, to determine the likelihood that the error moved the jury from a state of non-persuasion to a state of persuasion on a material issue in the case or distracted or diverted the jury from its factfinding role. *Id.* at 819, 825. To make this determination, we consider several nonexclusive factors, such as (1) the nature of the error, (2) the extent it was emphasized by the State, (3) the probable implications of the error, and (4) the weight a juror would probably place on the error. *Id.* at 820. The analysis should at least take into account "any and every circumstance apparent in the record that logically informs" our determination whether beyond a reasonable doubt, the error did not contribute to the conviction. *Id.* at 822; *Weekley v. State*, No. 05-10-01107-CR, 2013 WL 2316612, at *4 (Tex. App.—Dallas May 28, 2013, pet. ref'd) (mem. op., not designated for publication).

Appellant argues that the alleged error requires reversal because the State relied heavily on an "emotion-laden presentation that emphasized the unsavory nature of the dead bodies" at the funeral home. Thus, the comment about the failure to take responsibility necessarily implied that Appellant's in-court silence continued to

9

dishonor the dead and their families by his refusal to accept responsibility. Our analysis leads us to a different conclusion.

The theme of responsibility did run throughout the trial, but the theme was central to Appellant's defensive strategy. Beginning in his opening statement, Appellant's trial counsel suggested that Appellant was merely an employee at the funeral home and that it was Appellant's wife, Rachel Hardy, who was in charge, so he urged the jury to be patient to hear all about the issue of responsibility:

> You'll hear employees come up and talk and say the boss was Rachel Hardy. You'll hear Rachel Hardy, Rachel Hardy. *And this isn't a passing-the-buck kind of thing.* The question is, where does the buck stop? *If you work for somebody,* **ultimately who is responsible if you're handicap[ped], if you're limited of what you can do as an employee?** *That's the part you're missing, and that's the part that's so important to be patient for.* [Emphasis added.]

Appellant's trial counsel returned to the question of responsibility when cross-examining the funeral home's landlord:

> Q. Who did the day-to-day, [Appellant] or Rachel?
>
> A. [Appellant] did the day-to-day operation to the best of my knowledge, as far as funeral services and everything like that.
>
> Q. *So he was actually the worker and she was the boss?*
>
> A. I would assume, yes.
>
> Q. Okay. *And so when you're talking about she did the paperwork, signing leases, right, that was her responsibility?*
>
> A. Yes, that's what [Appellanr] told Jeff -- that's what Jeff told me. He said he took the leases home -- or with him so she could initial off.

Q. Okay. [Emphasis added.]

Indeed, because Appellant's defensive theory was essentially that he could not be culpable for the theft because he was not the owner, funeral director in charge, or person responsible for the funeral home's finances, the issue of responsibilities related to the funeral home came up repeatedly throughout the trial.

Appellant's trial counsel returned to the responsibility theme in his closing argument:

> In the time *[Appellant] accepts the money as an employee of the mortuary, he has it but he's holding it by the authority of the mortuary of the business and then depositing it.* At that point Rachel has control on how it's spent. And *I do remember Andrea saying that she didn't think that employees should be responsible for the bad decisions of the owner.* [Emphasis added.]

With Appellant's trial theme as the backdrop, the impact of the nature of the alleged error—a single allegedly improper comment from the prosecutor during closing argument—was minimal. The extent the comment was emphasized by the State was also minimal, given that the State did not return to it after Appellant's objection was overruled. *See Snowden*, 353 S.W.3d at 824–25 (concluding prosecutor's improper comment about the appellant's lack of present remorse was not emphasized and thus did not improperly persuade the jury when the comment was "never repeated or emphasized"). The probable implications of the error were minimal because the jury was admonished before closing arguments, as well as in the jury charge, that Appellant had the right not to testify and that the exercise of the right could not be used against him. *See Weekley*, 2013 WL 2316612, at *5 (concluding prosecutor's comment that

11

ostensibly implicated the appellant's decision not to testify was harmless error when "the court's charge included an instruction not to consider appellant's failure to testify, which was [also] read to the jury before closing argument"). Finally, the weight a juror would likely have placed on the error is minimal given that the court of criminal appeals has already concluded the evidence was sufficient to uphold Appellant's convictions. *Johnson II*, 560 S.W.3d at 230 (holding evidence sufficient to support two theft convictions); *see also Snowden*, 353 S.W.3d at 825 (concluding error was harmless when substantial, "if not overwhelming," evidence weighed against the appellant).

While we conclude the trial court did not abuse its discretion in overruling the objection to the prosecutor's comment, even if the court did abuse its discretion, we are persuaded beyond a reasonable doubt that the comment made no direct contribution to the jury's determination that Appellant was guilty of theft. Therefore, we hold that the allegedly erroneous comment is harmless because it was not likely to have moved the jury from a state of non-persuasion to persuasion on any material issue in this case and it was not likely to have distracted or diverted the jury from its factfinding role. *See Snowden*, 353 S.W.3d at 825 (concluding beyond a reasonable doubt that any prejudice caused by the prosecutor's comment about the appellant's lack of in-court remorse made no contribution to the jury's determination that the appellant was guilty of the underlying offense).

Accordingly, we overrule Appellant's first point.

### III. Was Appellant Improperly Denied Counsel?

In his second point, Appellant argues that the trial court improperly denied him counsel of his choice by barring one of his pro bono attorneys from participating in the trial along with Appellant's court-appointed lead counsel.

"The Federal and Texas Constitutions, as well as Texas statute, guarantee a defendant in a criminal proceeding the right to have assistance of counsel." *Gonzalez v. State*, 117 S.W.3d 831, 836 (Tex. Crim. App. 2003). "The right to assistance of counsel contemplates the defendant's right to obtain assistance from counsel of the defendant's choosing." *Id.* at 836–37. "However, the defendant's right to counsel of choice is not absolute." *Id.* at 837. Thus, "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151, 126 S. Ct. 2557, 2565 (2006).

In two published cases directly on point, *Whitney v. State*, 396 S.W.3d 696, 701 (Tex. App.—Fort Worth 2013, pet. ref'd) (mem. op.), and *Trammell v. State*, 287 S.W.3d 336, 343–44 (Tex. App.—Fort Worth 2009, no pet.), our court has held that a trial court does not violate a defendant's Sixth Amendment right to assistance of counsel when it excludes a non-court-appointed, pro bono lawyer from actively participating as co-counsel alongside court-appointed counsel. These holdings have been relied upon in an unpublished memorandum opinion by a sister court. *See Martinez v. State*, No. 05-17-00817-CR, 2018 WL 2434409, at *5 (Tex. App.—Dallas May 30, 2018, pet. ref'd) (mem. op., not designated for publication) (relying on *Whitney* and *Trammell* in support

of the conclusion that "an appellant's Sixth Amendment rights were not violated when the trial court excluded his pro bono co-counsel from its proceedings").

Appellant criticizes *Trammell* as going "too far" and urges that it "should be reconsidered." Appellant's contention is that while "of course" an indigent defendant is not entitled to demand appointed counsel of his choosing, once counsel has been appointed, an indigent defendant is free to have any other attorney provide assistance in his defense without interference from a trial court.

Although we understand Appellant's argument, it does not fit the facts of this case because the trial court did not prohibit all of Appellant's pro bono attorneys from assisting his court-appointed lead counsel. Rather, the trial court simply refused to let one of the three pro bono co-counsel—who had apparently been quite disruptive—sit at counsel's table or participate in the trial. This action was within the trial court's discretion. *See Lantrip v. State*, 336 S.W.3d 343, 351–52 (Tex. App.—Texarkana 2011, no pet.) ("The trial court has discretion in the administration of the courtroom in order to maintain a proper level of decorum and dignity."). With respect to the excluded pro bono co-counsel, the trial court explained that

> she's not going to sit at the counsel table because of unprofessional and undignified conduct for the entire day yesterday, which was she was talking loudly throughout the proceedings; she was laughing; she was waving her arms around; she was turning around and talking to people in the gallery; she was passing papers back and forth to people in the gallery; and she was causing a disruption for the entire day. And I chastised her several times, and then she moved into the gallery and continued to engage in that conduct by talking and laughing and making faces and moving her

hands around. And she was a disruption to the entire courtroom for the duration of the trial yesterday.

> *I did not bar her from the courtroom. I did not bar her from working on the case. She can be present in the gallery in a respectful manner, and she can advise you on anything you want her to advise you on or that she wants to advise you on.* But she is not going to sit at the counsel table when she cannot behave as an officer of the court. [Emphasis added.]

Appellant's court-appointed counsel was not disqualified or prohibited from participating at trial. Further, the trial court reminded Appellant's counsel that to the extent he had delegated cross-examination to the barred pro bono attorney, he was free to ask for a short recess or to reserve cross-examination for the end of the trial so that he could effectively prepare.[3] Moreover, one of the non-barred pro bono attorneys cross-examined two of the State's witnesses and questioned one of the Defense's witnesses on direct examination after the one pro bono attorney had been prohibited from participating in the trial.

Therefore, because we believe *Whitney* and *Trammell* were correctly decided and because Appellant was not denied the right to counsel, we hold that Appellant's Sixth Amendment rights were not violated when the trial court prohibited a disruptive

---

[3]Indeed, although the pro bono attorney was barred by the trial court from sitting at counsel's table, passing notes to counsel's table, or otherwise participating in the trial, she was permitted to stay in the gallery and advise Appellant's court-appointed lead counsel on any matter. When Appellant's court-appointed lead counsel objected and asserted that the aforementioned pro bono attorney had already prepared to cross-examine a witness, the trial court reminded Appellant's lead counsel that he could make allowances by reserving his cross-examination for the end of trial or asking for a short recess to confer with the pro bono attorney.

pro bono co-counsel from directly participating in the trial. *See Whitney*, 396 S.W.3d at

701; *Trammell*, 287 S.W.3d at 343–44.

Accordingly, we overrule Appellant's second point.

## IV. DOES THE JUDGMENT NEED TO BE MODIFIED?

In his third point, Appellant argues that one of the two judgments should be

modified because both included a $10,000 fine as punishment for each count of the

underlying theft offense even though the trial court ordered the sentences to run

concurrently.[4]  Appellant also complains that both judgments include and incorporate

separate orders[5] to withdraw funds from Appellant's inmate account for each $10,000

---

[4]The trial court signed two judgments—one for each count.  The judgment for Count One included a fine of $10,000 and court costs of $309, while the judgment for Count Two only provided for a fine of $10,000.  Appellant does not challenge the $309 in court costs.

[5]Although these instruments are styled as "orders," we recognize that they are not orders in the traditional sense.  *See Ramirez v. State*, 318 S.W.3d 906, 907 (Tex. App.—Waco 2010, no pet.) ("Although called an 'order,' the document [appellant] is seeking to have reviewed is nothing more than the notice to the Texas Department of Criminal Justice that a judgment has been rendered against [appellant] and that, pursuant to the statute, the Department should withdraw money from his inmate account."); *Snelson v. State*, 326 S.W.3d 754, 755 n.1 (Tex. App.—Amarillo 2010, no pet.) (explaining that the withdrawal order "is not an 'order' in the traditional sense of a court order" and is instead a notification issued pursuant to section 501.014(e) of the government code); *see also* Tex. Gov't Code Ann. § 501.014(e).  Thus, to avoid confusion, we, like other courts have done, will refer to these instruments herein as "withdrawal notices."  *See, e.g.*, *Snelson*, 326 S.W.3d at 755 n.1 ("Therefore, rather than refer to that document as an order, we prefer to use the term 'withdrawal notification' to avoid confusion[.]").

fine.[6] Although not raised by Appellant, our review of the record also reveals that there are two separate corresponding bills of cost—one for Count One reflecting a $10,000 fine and $309 in court costs for a total of $10,309, and the other for Count Two reflecting only a $10,000 fine.

The State concedes that in this case, because the sentences run concurrently, Appellant is only responsible for one $10,000 fine—not two $10,000 fines for a total fine of $20,000—but it nevertheless disagrees that the judgment should be modified. The State argues that there is no proof that the prison clerks and administrators have treated or will treat the two fines cumulatively rather than concurrently. The State further argues that we should not modify the withdrawal notice because it is a civil matter, governed by the government code. *See* Tex. Gov't Code Ann. § 501.014(e); *Harrell v. State*, 286 S.W.3d 315, 319 (Tex. 2009); *In re Johnson*, 280 S.W.3d 866, 869, 873 (Tex. Crim. App. 2008). Finally, the State alleges that any complaint about the withdrawal notices should have been raised in the trial court and was "forfeited" because it was not.

We agree with Appellant and modify the judgment for Count Two.

The penal code provides that sentences for more than one offense involving certain crimes run concurrently. *See* Tex. Penal Code Ann. § 3.03(a). The court of criminal appeals has held that section 3.03 applies to a defendant's entire sentence,

---

[6]In accordance with the judgment for Count One, that attached withdrawal notice includes an additional $309 in court costs for a total of $10,309.

17

which includes fines.  *See State v. Crook*, 248 S.W.3d 172, 174, 177 (Tex. Crim. App. 2008).  Thus, "[w]hen sentences are ordered to run concurrently, the judgment should not reflect a cumulated fine." *Habib v. State*, 431 S.W.3d 737, 742 (Tex. App.—Amarillo 2014, pet. ref'd); *cf. In re Buchel*, No. 13-18-00509-CR, 2018 WL 6381540, at *4 (Tex. App.—Corpus Christi–Edinburg Dec. 6, 2018, orig. proceeding) (mem. op., not designated for publication) ("Cases following *Crook* have essentially concluded that a defendant cannot be assessed more than one fine where a trial court's order requires that the defendant's sentences run concurrently.").  Because a trial court's pronouncement sentence is oral and the judgment, which includes the sentence assessed, is merely the written declaration and embodiment of that oral pronouncement, a written judgment may be modified to comport with an oral pronouncement that the fines are to run concurrently. *See Wiedenfield v. State*, 450 S.W.3d 905, 907 (Tex. App.—San Antonio 2014, no pet.).

Here, the trial court's oral pronouncement was that Appellant's sentences are to run concurrently.  Each written judgment plainly states that "**THIS SENTENCE SHALL RUN CONCURRENTLY.**"  However, as shown below, this statement appears after the confinement portion of the sentence but before the fine portion of the sentence, so the written judgments, although not technically wrong, are not models of clarity and could be construed as stating that Appellant's fines are cumulated:

| Punishment Assessed by: Jury | | Date Sentence Imposed: 9/24/2015 | | Date Sentence to Commence: 9/24/2015 |
|---|---|---|---|---|
| Punishment and Place of Confinement: | 2 YEARS State Jail Division, TDCJ | | | |
| | THIS SENTENCE SHALL RUN CONCURRENTLY. | | | |
| ☐ SENTENCE OF CONFINEMENT SUSPENDED, DEFENDANT PLACED ON COMMUNITY SUPERVISION FOR N/A. | | | | |
| Fine: $10,000.00 | Court Costs: $309.00 | Restitution: N/A | Restitution Payable to: ☐ VICTIM (see below) ☐ AGENCY/AGENT (see below) | |
| ☒ Attachment A, Order to Withdraw Funds, is incorporated into this judgment and made a part thereof. | | | | |

. . . .

| Punishment Assessed by: Jury | | Date Sentence Imposed: 9/24/2015 | | Date Sentence to Commence: 9/24/2015 |
|---|---|---|---|---|
| Punishment and Place of Confinement: | 2 YEARS State Jail Division, TDCJ | | | |
| | THIS SENTENCE SHALL RUN CONCURRENTLY. | | | |
| ☐ SENTENCE OF CONFINEMENT SUSPENDED, DEFENDANT PLACED ON COMMUNITY SUPERVISION FOR N/A. | | | | |
| Fine: $10,000.00 | Court Costs: $0.00 | Restitution: N/A | Restitution Payable to: ☐ VICTIM (see below) ☐ AGENCY/AGENT (see below) | |
| ☒ Attachment A, Order to Withdraw Funds, is incorporated into this judgment and made a part thereof. | | | | |

We believe this lack of clarity is borne out by the corresponding withdrawal notices and bills of cost.

Attached to and incorporated into the judgments are two withdrawal notices. One notice provides for withdrawal of $10,309 and the other provides for withdrawal of $10,000 from Appellant's inmate account. *See Aldana v. State*, No. 08-13-00243-CR, 2015 WL 2344023, at *2 (Tex. App.—El Paso May 14, 2015, pet. ref'd) (not designated for publication) (concluding there is "perhaps some ambiguity in the judgments with regard to the fines" because "court costs are included in only one judgment, but the fines appear in all three"). Also in the record are two bills of cost. One provides itemized court costs of $309 and a fine of $10,000 for a total amount owed of $10,309, while the other bill of cost provides only for a fine of $10,000. *See Habib*, 431 S.W.3d at 742 (modifying judgment to delete fine even though written judgments reflect that

19

the sentences are to run concurrently when each bill of cost assessed a separate fine). Thus, the record contains such ambiguity that a person not familiar with the complications we outline might believe there is authorization to withdraw up to $20,000 in fines from Appellant's inmate account, despite the State's concession that "Appellant is obligated to pay only one of the two $10,000 fines." *See, e.g.*, *Aldana*, 2015 WL 2344023, at *2 (recognizing that while "it is natural to say that a sentence runs concurrently, . . . paying a fine concurrently is perhaps not as intuitive a concept").

Accordingly, we sustain Appellant's third point. We modify the judgment for Count Two to delete the $10,000 fine, and we strike the corresponding $10,000 withdrawal notice and bill of cost. *See Williams v. State*, 495 S.W.3d 583, 591 (Tex. App.—Houston [1st Dist.] 2016) (op. on reh'g) (reforming judgment to "delete the fine from the bills of cost"), *pet. dism'd, improvidently granted*, No. PD-0947-16, 2017 WL 1493488 (Tex. Crim. App. 2017); *Habib*, 431 S.W.3d at 742 (modifying one of judgments to delete fine when bills of cost reflected cumulated fines); *see also Cantu v. State*, No. 07-16-00389-CR, 2018 WL 618610, at *5 (Tex. App.—Amarillo Jan. 25, 2018, no pet.) (mem. op., not designated for publication) ("Here, the judgments and orders to withdraw funds in both causes include a $10,000 fine. Accordingly, we strike the $10,000 fine from the judgment and order to withdraw funds in trial court cause number CR-15F-114."). The judgment for Count One and its corresponding withdrawal notice and bill of cost are unchanged. We affirm the judgments as modified.

20

## V. Conclusion

Having resolved Appellant's three points we were instructed to address on remand, we affirm the trial court's judgments as modified.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: May 23, 2019