Death Opinion










 






IN THE COURT OF CRIMINAL APPEALS


OF TEXAS







NO. 74,138






JAMAAL HOWARD, Appellant



v.



THE STATE OF TEXAS






APPEAL FROM


HARDIN COUNTY






 Per Curiam. Meyers and Holcomb, JJ., dissent.



 The appellant, Jamaal Howard, was convicted in April 2001 of capital murder, (1) an
offense that was committed on May 12, 2000. Pursuant to the jury's answers to the special
issues set forth in Code of Criminal Procedure Article 37.071, Sections 2(b) and 2(e), the
trial judge sentenced the appellant to death. (2) Direct appeal to this Court is automatic. (3) The
appellant raises nine points of error. We affirm.

 In his sixth point of error, the appellant claims that the evidence is legally
insufficient to support the jury's verdict on the issue of his future dangerousness. He
argues that there was no evidence of premeditation to commit the instant murder and that he
has no history of prior criminal violence. Following is a review of the relevant evidence in a
light most favorable to the verdict. See Jackson v. Virginia, 443 U.S. 307 (1991).

 The appellant stole a gun from his grandfather the night before the murder and hid it.
Despite his family's efforts to persuade him to turn over the gun, the appellant refused. The
following morning, the appellant retrieved the gun and walked several blocks from his
house to the Chevron store. After peering in the windows, he entered the store, went into
the secured office area where the victim was sitting, cocked the gun, and shot the victim in
the chest. The appellant stole $114.00 from the cash register and reached over the dying
victim to steal a carton of cigarettes before leaving. The offense was recorded on
videotape. The appellant denied committing the offense until he was told it was videotaped.
He told the officer who took his statement that he was not sorry for committing the
offense.

 At the punishment stage of trial, the State presented evidence that the appellant
demonstrated a disregard for authority and school rules despite the continued efforts of his
mother and educators. During one incident, the appellant punched a pregnant teacher in the
chest with his fist when she asked him to return to his seat. When the appellant was
assigned to an alternative school, he refused to comply with its rules and standards, and he
was defiant and disruptive. The State also presented evidence of the appellant's possession
of controlled substances, his fighting with police officers and resisting arrest, his
committing of several burglaries as a juvenile, and his fighting with other inmates. Dr.
Edward Gripon testified for the State that the appellant was not suffering from
schizophrenia, but rather was suffering from antisocial personality disorder.

 The evidence is sufficient to support the jury's verdict. The appellant's actions in
committing the crime were senseless and deliberate; his actions immediately following its
commission were equally so. Given these actions, combined with his appellant's past
history of assaultive conduct, disregard for authority and rules, drug offenses, and juvenile
offenses, and the expert testimony that the appellant displayed an antisocial personality
disorder, the jury rationally could have concluded beyond a reasonable doubt that the
appellant would probably commit criminal acts of violence that would pose a continuing
threat to society. Point of error six is overruled.

 In his seventh point of error, the appellant claims that the evidence is insufficient to
support the jury's verdict on the mitigation special issue. The appellant argues that this
Court's refusal to review the jury's verdict denies him the right to a "meaningful appellate
review." This Court has repeatedly declined to review the sufficiency of the mitigating
evidence and has rejected the claim that it deprives a defendant of a meaningful appellate
review. Salazar v. State, 38 S.W.3d 141, 146 (Tex. Cr. App.), cert. denied, 534 U.S. 855
(2001); McGinn v. State, 961 S.W.2d 161, 166 (Tex. Cr. App.1998), cert. denied, 525
U.S. 967 (1998). Point of error seven is overruled.

 In his first point of error, the appellant claims that the trial court erred in overruling
his objection to the prosecutor's jury argument at punishment. During the punishment
stage, the prosecutor argued: 

 When he is not waiting for capital murder trial and not going to have to be on
his best behavior, then what is he going to act like? Gang activity, 5-9 Hoover
Crypts [sic], and Crypts [sic] are in prison, too. He will fall right in with his
old buds; extortion, rape, drug trafficking --


The appellant's objection to the argument as outside the record was overruled. 

 Previously, however, during the prosecutor's argument at the punishment stage, the
prosecutor made similar statements without objection. For instance, the prosecutor opened
his argument, with no objection, as follows:

 [U]ntil Dr. Laine's medical record came in through Dr. Fason and -- I didn't
know that the defendant had been stalking a girl and I didn't know that he had
told Dr. Laine that he admitted to being a gang member, smoking
marijuana, drinking alcohol, carrying a gun. 


(Emphasis added). The prosecutor further argued, without objection, that the appellant
would have the opportunity to join prison gangs and participate in their activities, if he
chose to:

 The gentleman from the prison prosecution unit told you also that drugs are a
big factor with prison gangs, that they sell drugs to make money in prison
gangs. So, this will be another indication that [the appellant] would have the
opportunity, if he wants to, if he hadn't learned his lesson, that he is going to
be a future danger.


In light of the jury's previous exposure to these similar arguments, suggesting the potential
for the appellant's participation in gang-related activities in prison, any error is harmless.
Cf. Massey v. State, 933 S.W.2d 141, 149 (Tex. Cr. App. 1996) (holding that if defendant
objects to admission of evidence but same evidence is subsequently introduced from
another source without objection defendant waives earlier objection). Point of error one is
overruled.

 In his third point of error, the appellant claims that the trial court erred in overruling
his objection to the prosecutor's jury argument at the punishment stage of trial. During
closing argument, the prosecutor made the following comments:

 [Prosecutor]: That's the type of person you're dealing with in Jamaal
Howard. And since that time not one feeling of remorse, not one word of
sorry.


 [Defense objection, overruled]


 [Prosecutor]: In fact, he told Ranger Wilson, "I'm not sorry." That's the type
of person you are dealing with in Jamaal Howard.


Appellant claims the prosecutor's argument was a comment on his failure to testify, in
violation of the Fifth Amendment to the United States Constitution, and could not be
understood as based on his discussion with Ranger Wilson. 

 Texas Ranger L.C. Wilson took the appellant's written statement. Following is an
excerpt from Wilson's testimony:

 [Prosecutor]: Did [appellant] give any reason why he did it?


 [Wilson]: No. No, he never did.


 Q. Did he express any remorse to you?


 A. No, he didn't, you know, because right at the end of that statement I
asked him, I said, "Jamaal, you know, in a year or so from now a jury is going
to hear this and they are going to want to know why you did it. You know, now
is your chance, you know. I'm asking you to explain to anybody." He didn't
have a reason. I asked him, you know, "Do you have any remorse for this?" He
said, "No." And I said, "You're willing to sign that statement? You have no
remorse?" And he did.


On cross-examination, defense counsel asked Wilson if he had asked the appellant if he
understood the meaning of the word "remorse." Wilson responded that he did not
specifically remember asking the appellant if he understood the meaning of the word
remorse, but he remembered asking him, "Do you feel sorry about what you did?"

 This Court has held that a prosecutor's comment on a defendant's failure to show
remorse is tantamount to a comment on his failure to testify. Davis v. State, 782 S.W.2d
211, 222 (Tex. Cr. App. 1989)(citing Dickinson v. State, 685 S.W.2d 320, 324 (Tex. Cr.
App.1984)), cert. denied, 495 U.S. 940 (1990). However, if there is evidence in the record
supporting the comment, then no error is shown. (4) Id. (citing Fearance v. State, 771 S.W.2d
486, 514 (Tex. Cr. App. 1988)). Here, Wilson testified that the appellant told him he had no
remorse. The prosecutor's argument was therefore a proper summation of the evidence.
See id. Point of error three is overruled.

 In his second point of error, the appellant claims that "[a] procedure that permits the
death penalty to be inflicted on defendants with mental retardation despite their diminished
personal culpability violates the Eighth Amendment to the United States Constitution." The
appellant argues that the Eighth Amendment requires that mentally retarded individuals, like
himself, be excluded as a class from execution. As evidence of his mental retardation, he
points to the testimony of Dr. James Duncan, who testified that the appellant had borderline
to mildly impaired intellectual functioning. The appellant argues that an individual put to
death must be able to rationally appreciate and evaluate the consequences of his actions. In
a Supplemental List of Authorities, the appellant cites to Atkins v. Virginia, 536 U.S. 304
(2002).

 In Atkins, the United States Supreme Court concluded that the execution of a
mentally retarded individual is unconstitutionally excessive under the Eighth Amendment.
Id., at 321. Recognizing that "not all people who claim to be mentally retarded will be so
impaired as to fall within the range of mentally retarded offenders about whom there is a
national consensus," the Court left to the States "the task of developing appropriate ways to
enforce the constitutional restriction upon its execution of sentences." Id., at 317.

 As a stop-gap measure for cases that we must decide in the absence of legislation,
this Court has set temporary guidelines for determining mental retardation in the death
penalty context. Ex parte Briseno, 135 S.W.3d 1, 5 (Tex. Cr. App. 2004). We apply the
definition found in the "Persons with Mental Retardation Act" (Health & Safety Code,
Chapter 591): "'Mental retardation' means significantly subaverage general intellectual
functioning that is concurrent with deficits in adaptive behavior and originates during the
developmental period." (5) This definition is essentially the same as the one utilized by the
American Association of Mental Retardation (AAMR). (6) "Significantly subaverage general
intellectual functioning" is defined as an IQ of 70 or below. (7) "'Adaptive behavior' means the
effectiveness with or degree to which a person meets the standards of personal
independence and social responsibility expected of the person's age and cultural group." (8)
The developmental period is understood to be the period before age 18. (9)

 In this case, there was little testimony bearing on the issue of the appellant's
limitations in adaptive behavior, other than the testimony about his lack of personal hygiene
which was presented by the defense as indicative of the appellant's alleged schizophrenia.
Although there was testimony that the appellant was unwilling to meet the rules imposed by
the alternative school, this testimony was presented as bearing on the issue of whether the
appellant was suffering from a mental illness, or whether his actions were, as the State
contended, volitional.

 Dr. Fred Fason, a defense expert, testified that when he first met with the appellant
and began to administer one of the psychological tests, the appellant did not know some of
the words in the first few questions. Fason testified that this caused him to conclude that
the appellant could not read at the sixth grade level and to question whether the appellant
was mentally retarded. However, upon questioning defense counsel, talking to the
appellant's mother, and retrieving the appellant's school records, Fason discovered that the
appellant had started out in school as a very bright student; the appellant was in the ninetieth
percentile in math in the second grade, but had dropped to about the thirtieth percentile in
the fifth grade. Fason theorized that the appellant's declining performance in school was
due to the onset of schizophrenia.

 One of the court's independent experts, Dr. Duncan, reached a similar conclusion.
At one of the appellant's competency hearings, Duncan testified that he gave the appellant
portions of an I.Q. test and that the appellant tested in the borderline to mildly impaired
range which Duncan said was the level of an eleven or twelve year-old. On cross-examination, however, it was emphasized that Duncan had given the appellant only portions
of an I.Q. test on which he had based an estimate of the appellant's I.Q. The State's expert,
Dr. Gripon, testified that the appellant's problems in school stemmed solely from his
attention-deficit disorder which was addressed when he took his medication; when the
appellant refused to take his medication, his grades declined and his behavior deteriorated.
Gripon did not see any evidence that the appellant suffered from schizophrenia.

 Although experts for both the State and the defense testified that the appellant's
intellectual functioning and adaptive behavior were impaired to some degree, the testimony
was not sufficiently developed to establish that appellant was "mentally retarded" under the
guidelines we set in Briseno. Because the evidence does not support the appellant's claim
that he is mentally retarded, we reject his Eighth Amendment claim. See Stevenson v.
State, 73 S.W.3d 914, 917 (Tex. Cr. App. 2002). Point of error two is overruled. 

 In his fourth and fifth points of error, the appellant claims that he was denied
effective assistance of counsel as guaranteed by the Sixth Amendment to the United States
Constitution and Article I, Section 10 of the Texas Constitution, respectively, when his trial
counsel failed to introduce expert-witness testimony that he had an I.Q. in the range of 65
to 70.

 The appellant claims that, during the hearing on his competency to stand trial, Dr.
Duncan testified that he had assessed the appellant's I.Q. in the range of 65 to 70. At the
guilt phase of trial, however, although Duncan testified about the appellant's "borderline to
mildly impaired functioning," he neither testified specifically to his determination of the
appellant's I.Q., nor was he questioned by the appellant's counsel about the I.Q. test he had
administered. The appellant claims that his counsel was ineffective in failing to elicit
Duncan's testimony about his I.Q. at the guilt or innocence phase.

 To establish ineffective assistance of counsel, the appellant must meet the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984); Ex parte
Varelas, 45 S.W.3d 627 (Tex. Cr. App. 2001). First, the appellant must demonstrate that
counsel's performance was deficient. Id., at 629. Second, the appellant must show that
counsel's performance prejudiced his defense at trial. Id. That is, he must show that there is
a reasonable probability that the result of the proceeding would have been different but for
the errors made by counsel. Id. Allegations of ineffectiveness must be firmly founded in
the record as counsel is presumed to have rendered adequate assistance and made all
significant decision in the exercise of reasonable professional judgment. Id.

 The record from the competency hearing reflects that Duncan testified that he
administered to the appellant only "some portions" of an I.Q. test in order to arrive at an
"estimate" of the appellant's I.Q.:

 [Duncan]: I gave [the appellant] some portions of an I.Q. test to arrive at
that estimate, some of the verbal subtests of the Weschler [A]dult
[I]ntelligence [S]cale. 


 * * *


 Q. Okay. And, so, were you able to arrive at a numerical I.Q. score?


 A. I would say in the range of 70; but because I didn't give the full test,
that number would be -- there would a range there. I would say that based on
the -- scoring the subtest that I gave and figuring out that number, would be a
65 to 70 kind of I.Q. range.


Given that Duncan administered only "portions" of an I.Q. test to arrive at an "estimate" of
the appellant's I.Q., we presume that the appellant's defense counsel was exercising
reasonable trial strategy by not eliciting such testimony from Duncan before the jury, in
light of the speculative weight of the testimony and its susceptibility to cross-examination. (10) Moreover, the appellant has not shown that the outcome of the trial would
have been different had the testimony been elicited. Points of error four and five are
overruled.

 In his eighth and ninth points of error, the appellant claims that his trial counsel was
ineffective under the Sixth Amendment and Article I, Section 10 of the Texas Constitution,
respectively, by failing to object to the prosecutor's argument that appellant had been
"stalking" someone when he claims no such evidence was introduced at trial. During the
punishment stage of trial, the prosecutor argued that the appellant "had been stalking a girl":
"Then we find out that he was stalking a young lady. That's a threat of violence."

 During the State's cross-examination of defense witness Dr. Fred Fason, the
prosecutor questioned Fason about the factors he considered in making his diagnosis of the
appellant:

 [Prosecutor]: And subsequent to that, as an adult, having charges related to
delivery of cocaine, possession of cocaine, would that be important in
making that diagnosis?


 [Fason]: Well, it's something you take into consideration; but it
wouldn't be -- it's not pathognomonic of -- of any social personality
disorder.


 Q. And even the history that his mother gave you that he was stalking
some young lady -- 


 A. Yes.


 Q. -- would that be important in diagnosing antisocial personality?


 A. Not in the way it was presented, no. I mean it's significant. It's
another -- it's much like -- arriving at a diagnosis, in a way, is kind of like
working a jigsaw puzzle. You take a whole bunch of different pieces and you
see how they fit together to come out with a picture; and that would be a
piece of the puzzle.


 Q. And taking that all together, you know, a history from the age of 13,
from theft, to 15, 16, dealing drugs, to stalking, to capital murder, all that
taken together doesn't that kind of suggest that there may be an antisocial
personality here?


(Emphasis added). Fason did not refute the suggestion that the appellant had reportedly
stalked a girl. Rather, Fason affirmed the prosecutor's suggestion. Fason's affirmative
response to the prosecutor's question made the suggestion become evidence, albeit slight.
Thus, the prosecutor's argument referring to the evidence was not objectionable. Points of
error eight and nine are overruled.

 The judgment of the trial court is affirmed.


En banc.

Delivered October 13, 2004.

Publish.
1. See Tex. Penal Code § 19.03(a). 
2. Tex. Code Crim. Proc. art. 37.071, § 2(g).
3. Art. 37.071, § 2(h). 
4. The appellant did not complain at trial, nor does he complain in this appeal, about the
admission of Wilson's testimony concerning the appellant's statements regarding his lack of
remorse. 
5. Id., § 591.003(13) (quoted in Briseno, 135 S.W.3d, at 8).
6. See Briseno, 135 S.W.3d ,at 7.
7. Id., at 7, n.24.
8. Id., at 7, n.25 (quoting § 591.003(1)).
9. Id., at 7 (discussing AAMR definition).
10. Atkins v. Virginia, 536 U.S. 304 (2002), discussed in connection with point of error two above,
was decided on June 20, 2002. Appellant was tried and convicted in April 2001.