**Affirm and Opinion Filed April 9, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00073-CR

**ROGER ALLEN STULCE, JR., Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 380th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 380-82426-2012**

## MEMORANDUM OPINION

Before Justices Francis, Lang-Miers, and Whitehill
Opinion by Justice Francis

Roger Allen Stulce, Jr. appeals his conviction for the sexual assault of A.E. After the jury found him guilty, the trial court assessed punishment at twenty years in prison and a $10,000 fine. In a single issue, appellant claims the trial court erred by admitting certain evidence. We affirm.

In the spring of 2012, A.E. was going through a divorce and needed a place to stay. In June, she responded to a Craigslist ad placed by appellant about an apartment for sublease. In the ad, appellant stated he was "stuck in a lease until September 1st" but was no longer staying at the apartment. He offered the apartment "to a person who could use a short term fix to their situation," claiming that any money he received would be "a savings" to him and inviting the

reader to "offer what you can." The ad described the apartment and gave the address, an email address, and a contact phone number.

A.E. emailed and texted the cell number listed. Appellant replied, giving his name and the name of the apartment complex where the unit was located. They made arrangements to meet at the apartment on June 14. Because A.E. liked the apartment and its location, she told appellant she would sublease it. They agreed she would pay $825 a month for July and August but only $400 for the remaining days of June. A.E. left to get the $400 in cash and then contacted appellant to set up another meeting. While she was driving to meet him, appellant texted her and said he realized she was having a hard time and "would like [her] to be [his] guest and show [her] appreciation." When she received the text, she was almost at the apartment complex. A.E. replied, asking if he meant sexually, but he did not respond. Shortly thereafter, she arrived at the parking lot where appellant was getting into his truck. He told her he was embarrassed because what he texted was inappropriate and that she should "just forget it." A.E. gave him the $400, and he gave her a key. That night, she moved some of her things into the apartment but did not spend the night.

The following day, A.E. searched the internet for information about appellant and discovered what she termed as "disturbing things." Appellant had several ads for the same apartment; however, many ads wanted the sublessee to "take care of" him, "clean up after" him, or sought sexual favors. A.E. texted appellant, telling him the situation had changed and she no longer wanted to sublease the apartment. He told her he knew there were things he needed to explain and, if she was not satisfied with his explanation, he would return the $400 to her. They met in the parking lot of the apartment complex where appellant questioned her about what she knew and how she found out. He did not, however, return her money. At the end of the discussion, he tried to kiss her. A.E. left.

–2–

Although A.E. arranged for friends to help her retrieve her things, they ultimately were not available when she needed them. On the evening of June 25, knowing appellant was not at the apartment, A.E. went by to get her things. Appellant, however, unexpectedly showed up. He pushed his way into the apartment and raped her. He kept her at the apartment until the following morning, repeatedly raping her vaginally and anally. Finally, when she stopped fighting back, he told her "[I]f you're not going to fight me, I can't get off," and left. A.E. contacted a friend who called the police. Appellant was later arrested and charged with sexual assault.

During trial, the State offered Exhibit 1. A.E. identified it as the ad about the apartment she saw and answered. Appellant stated he had no objection to the exhibit. A.E. then testified about searching the internet using appellant's name and the apartment address and identified State's Exhibits 1A through 1G as being similar to ads she found. Appellant objected to admitting the exhibits on authenticity grounds, stating A.E. could not personally identify the documents or testify as to their authenticity or accuracy. In response to the trial court's questions, A.E. said they were not the identical ads she saw when she searched for information about appellant because the dates of the ads being offered were July 7 through July 15, at least two weeks after she was raped. According to A.E., however, the content of the ads was the same; they were "the exact same wording . . . just different days. He re−posted every few days, the same type of ads every few days." After A.E. confirmed the wording was the same as the wording of the ads she had previously seen, the trial court overruled appellant's objection and admitted Exhibits 1A through 1G.

In his sole issue, appellant claims the trial court erred by admitting the State's Exhibits 1A through 1G. He claims they were not sufficiently authenticated and their admission affected his substantial rights.

We first question whether this issue is preserved for review. After the trial court overruled appellant's objection and admitted the State's exhibits, A.E. told the jury that the day after appellant made the comment about showing "appreciation," she searched the internet for information about him. She "found some similar ads that were a whole different, I don't know if 'offer' is the word, [but they were] completely different from how he explained what was going on." The ad she responded to stated he needed to sublease the apartment but did not need much money, so the situation was a win-win, helping both the sublessor and sublessee. The other ads were, "I need someone to take care of me and clean up after me" as well as ones seeking a sexual encounter, "quite brazen to female only, if you've got problems with men, don't respond, send a picture." Appellant did not object to this testimony.

In addition, McKinney police Detective Matt Baxter said that, after interviewing A.E., he searched the internet and printed Exhibits 1A through 1G. He described the content of the ads and how they were similar to the one A.E. answered but said he did not know whether appellant posted the ads. McKinney police officer Ursula Watson said she relied on Exhibits 1A, 1B, and 1C when investigating A.E.'s claims. Acting undercover, Watson responded to the ads and asked about the apartment; appellant contacted her through a Google email account set up by the police. She eventually met appellant at the apartment to discuss the terms of subleasing it. Appellant did not object to Baxter's or Watson's testimony.

The record shows at least two witnesses, in addition to A.E., testified about the ads without objection. The admission of the same or substantially similar evidence from another source, without objection, waives previously stated objections. *See Howard v. State*, 153 S.W.3d 382, 385 (Tex. Crim. App. 2004).

Even assuming the objection was not waived and the trial court erred, we do not reverse a ruling based on nonconstitutional error that does not affect "substantial rights." TEX. R. APP. P.

–4–

44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). After examining the record as a whole, if we determine that complained-of error had a slight or no effect on the jury, we will not overturn the trial court's ruling. *Neal v. State*, 256 S.W.3d 264, 285 (Tex. Crim. App. 2008). The court of criminal appeals has observed that the presence of "overwhelming evidence of guilt" also plays a "determinative role" in this analysis. *See id.*, *Motilla v. State*, 78 S.W.3d 352, 356 (Tex. Crim. App. 2002).

In assessing the likelihood that the jury's decision was adversely affected by the error, we should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error, and how the error might be considered in connection with other evidence in the case. *See Motilla*, 78 S.W.3d at 355. We examine the entire trial record and calculate, as much as possible, the probable impact of the error upon the rest of the evidence. *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010).

We have reviewed the entire record: voir dire, trial on the merits, including A.E.'s lengthy and detailed testimony about being repeatedly raped by appellant, and closing arguments. Although appellant's theory was the sexual encounter was consensual, the jury heard A.E.'s testimony that appellant pushed his way into the apartment, shoved her against the wall, and penetrated her rectum and vagina with his fingers. He then dragged her by her hair to the dining room where he raped her anally, telling her to be "a good bitch, be a good whore." He continued to rape her vaginally and anally that night and into the following morning. A.E. said there was a point in time when she realized "the struggle was his favorite part." When she quit fighting, he got "real angry" and said, "[I]f you're not going to fight me, I can't get off." She said at that point, she feared he was going to kill her. Given the strength of the State's case, we

conclude the admission of Exhibits 1A through 1G, even if erroneous, did not influence the jury or had "but a slight effect." *See Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). We overrule appellant's sole issue.

We affirm the trial court's judgment.

/Molly Francis/
MOLLY FRANCIS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
140073F.U05

–6–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ROGER ALLEN STULCE, JR., Appellant

No. 05-14-00073-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 380th Judicial District Court, Collin County, Texas
Trial Court Cause No. 380-82426-2012.
Opinion delivered by Justice Francis, Justices Lang-Miers and Whitehill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered April 9, 2015.