**Opinion issued October 31, 2023**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-22-00607-CR

———————————

**DAVID LEE ROUTT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 339th District Court**
**Harris County, Texas**
**Trial Court Case No. 1662126**

---

## MEMORANDUM OPINION

A jury found Appellant David Lee Routt guilty of the third-degree felony offense of assault against a family member and returned a special issue affirmatively finding Appellant used a deadly weapon during the commission of the offense. After

finding two enhancement paragraphs true, the trial court assessed Appellant's punishment at fifty years' incarceration.

On appeal, Appellant argues (1) the trial court erred by allowing the State to mischaracterize the law of self-defense during closing arguments, and (2) his due process rights were violated during the sentencing portion of his trial because the trial judge was biased against him.

We affirm the trial court's judgment.

## Background

Appellant David Lee Routt was arrested and charged with committing the offense of assault against Kayonni Fields. The indictment alleges that Routt knowingly caused bodily injury to Fields, someone with whom Routt was in a dating relationship, by striking Fields with his hand, striking her with a blunt object, pulling her hair with his hand, and pulling her to the ground with his hand. The State alleged that Routt used and exhibited a deadly weapon, namely a motor vehicle and a firearm, during the commission of the offense.

The State further alleged that Routt had been previously convicted of the offense of assault involving a member of his household or someone with whom he was in a dating relationship. Pursuant to Section 22.01(b)(2) of the Texas Penal Code, this elevated the indicted charge of assault against Fields from a Class A

2

misdemeanor to a third-degree felony.[1]  Separately, the indictment included two punishment enhancement paragraphs alleging that Routt had been convicted of the felony offense of possession of a controlled substance in 1991, and the felony offense of robbery in 2006.

During opening arguments, Routt's counsel told the jury that the evidence would show Routt acted in self-defense because Fields was the aggressor who threatened Routt and made "the first active aggressive moves in terms of trying to hit someone."

## A.    Guilt-Innocence Phase of Trial

Fields testified that she and Routt had been dating for six months when Routt came to her apartment for dinner one evening.  According to Fields, another man had shot Routt two weeks before, and Routt was angry and yelling about the shooting when he arrived at her apartment.  Fields testified Routt threatened "to get the guy back who shot him."  When Fields, who was standing in the living room, told Routt to be quiet because he would disturb her neighbors, Routt became even angrier and

---

[1]    Texas Penal Code Section 22.01(a) provides that a person commits the offense of assault if he "intentionally, knowingly, or recklessly causes bodily injury to another." TEX. PENAL CODE § 22.01(a)(1).  An offense under Section 22.01(a)(1) is a Class A misdemeanor, except that the offense is elevated to a third-degree felony if the offense is committed against someone with whom the defendant is in a dating relationship and the defendant has been previously convicted of the offense of assault against someone with whom the defendant was in a dating relationship. *See id.* § 22.01(b)(2)(A); *id.* § 71.0021(b) (defining "dating relationship").

he choked her with both of his hands while telling her, "Bitch, I'm going to kill you." When Routt eventually let Fields go, he pushed her, causing Fields to fall on the couch. Routt, who was yelling and threatening Fields, went to Fields' bedroom and when he emerged, Fields saw Routt put a revolver in his pocket. Routt then walked to the kitchen, grabbed the small case containing Fields' handgun off the kitchen counter and walked out of the apartment. Fields testified she was afraid Routt was going to use her gun to shoot the man who had shot Routt. She followed Routt to the parking garage of her apartment complex and pleaded with him to give her gun back to her.

According to Fields, Routt threatened to kill her when they were in the parking garage. The State introduced surveillance videos from the parking garage in Field's apartment complex and still photographs from the videos depicting Fields' and Routt's encounter in the parking garage. Fields testified that Routt "rais[ed] his hand to hit" her and she "put up [her] hand up to block it." "He's shoving, pushing, and I'm trying to run away." According to Fields, Routt pushed her to the ground, dragged her across the ground by her braids, pulled her hair with such force that Routt ripped one of her braids from her scalp, and struck her in the back of the head with his revolver. Routt then walked to his truck and Fields picked up her braid and walked towards her apartment building. When Fields reached the building's door,

4

she turned around to make sure Routt was leaving. Routt then tried to hit her with his truck, but he stopped right before he struck her, and then drove away.

Fields called 9-1-1 to report the assault. According to Fields, it took the police two hours to respond to her multiple calls for assistance. During that time, Routt returned to her apartment to retrieve a watch he had left behind. He also sent Fields text messages threatening to kill her if she told the police about the assault and threatening to go after her family. Fields went to the hospital the next day, where she was diagnosed with a concussion.

On cross-examination, Fields admitted she and Routt argued, and she followed Routt out of her apartment when he walked away. But Fields denied threatening or screaming at Routt, or "get[ting] in his face." She testified:

| Counsel: | [Routt] then bucks up at you to try to keep you away from him because you've already been aggressive in that room with him, correct? |
|---|---|
| Fields: | No. |
| Counsel: | You then take that moment to advance on him and swing at him, correct? |
| Fields: | No. |
| Counsel: | He then drops what's in his hands [Fields' handgun] and starts to swing back at you, correct? |
| Fields: | Yes. |
| Counsel: | He then starts to defend himself, right? |
| Fields: | No. |

5

In addition to the surveillance videos from the parking garage, still pictures taken from those videos, and Fields' testimony, the State introduced text messages Routt sent to Fields and Fields' hospital records.

**B.     Jury Charge**

At Routt's request and over the State's objection, the trial court included the following self-defense instruction in the charge:

> Upon the law of self-defense, you are instructed that a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other person's use or attempted use of unlawful force. The use of force against another is not justified in response to verbal provocation alone.
>
> . . .
>
> When a person is attacked with unlawful force, or he reasonably believes he is under attack or attempted attack with unlawful force, and there is created in the mind of such person a reasonable expectation or fear of some bodily injury, then the law excuses or justifies such person in resorting to force to the degree that he reasonably believes is immediately necessary, viewed from his standpoint at the time, to protect himself from attack or attempted attack. It is not necessary that there be an actual attack or attempted attack, as a person has a right to defend his person from apparent danger as fully and to the same extent as he would had the danger been real, provided that he acted upon a reasonable apprehension of danger, as it appeared to him from his standpoint at the time, and that he reasonably believed such force was immediately necessary to protect himself against the other person's use or attempted use of unlawful force.

The jury was instructed that the term "reasonable belief" means "a belief that would be held by an ordinary and prudent person in the same circumstances as the defendant."

After hearing closing arguments, the jury convicted Routt of the third-degree felony offense of assault. The jury found Routt had "used or exhibited a deadly weapon, namely, a firearm and/or a motor vehicle, during the commission of the offense."[2]

## C. Punishment Phase of Trial

During the punishment phase of trial, Routt pleaded "not true" to the State's allegations he had been previously convicted of the felony offense of possession of a controlled substance in 1991 and the felony offense of robbery in 2006. The State presented evidence that Routt had been previously convicted of possession of a controlled substance and robbery, as well as for non-violent drug offenses in 1990 and 1998, evading arrest and evading detention in 2002, and credit card abuse in 2009, 2015, 2016, and 2017. The State also presented evidence Routt was convicted twice of burglary of a motor vehicle in 2021 after he broke into vehicles parked at a daycare.

---

[2]  We discuss the pertinent portions of Routt's and the State's closing arguments below in the "Improper Jury Argument" section.

In addition to Routt's prior convictions, the State presented evidence from multiple witnesses that Routt had violated the conditions of his bond and an October 2018 protective order by, among other things, sending Fields threatening text messages and phone calls, going to Fields' apartment or place of work, and following Fields as she left work one day and ramming her car from behind with his vehicle.

Routt's mother and daughter testified on his behalf. Routt's mother described him as a tender and loving person who is admired in the community. She testified that Routt had "been through some things" but she believed he would be able to address them and "would really try to do the best he could to bring his life better than what it has been." She asked the trial court to assess Routt the minimum sentence. Routt's adult daughter, who was pregnant with Routt's first grandchild, testified she had a good relationship with Routt, who she described as loving, caring, and compassionate. She believed that Routt was redeemable, and she asked the trial court to assess Routt the minimum sentence.

The trial court assessed Routt's punishment at fifty years' incarceration.[3] This appeal followed.

---

[3] *See* TEX. PENAL CODE § 12.42(d) (stating punishment range for felony offense is "for any term of not more than 99 years or less than 25 years" if "defendant has previously been finally convicted of two [prior] felony offenses").

**Improper Jury Argument**

In his first issue, Routt argues the trial court erred by allowing the State's prosecutor to misstate the law of self-defense during her closing argument.[4] According to Routt, the prosecutor's statement during closing arguments that the law of self-defense requires exact force, or "like for like" action, to be justified is contrary to the proportionality requirement in Texas Penal Code Section 9.31, which only requires the actor reasonably to believe that the force used and the degree of such force was immediately necessary.

The State responds that, when viewed in context, the prosecutor's statement during closing argument was a correct statement of the law applicable to self-defense. And even if the prosecutor's argument was a misstatement of the law, the State argues Routt was not harmed because (1) he was not entitled to an instruction on self-defense, and (2) the prosecutor made the same or similar arguments regarding the proportionality requirement of self-defense during her closing argument to which Routt did not object.

**A.    Law of Self-Defense**

Section 9.31(a) of the Texas Penal Code states that "a person is justified in using force against another when and to the degree the actor reasonably believes the

---

[4]    Routt is not challenging the sufficiency of the evidence supporting the jury's rejection of self-defense.

force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." TEX. PENAL CODE § 9.31(a). "The amount of force used must be in proportion to the force encountered." *Hines v. State*, 570 S.W.3d 297, 304 (Tex. App.—Houston [1st Dist.] 2018, no pet.); *see also Evans v. State*, No. 10-08-00319-CR, 2010 WL 376940, at *2 (Tex. App.—Waco Feb. 3, 2010, pet. ref'd) (mem. op., not designated for publication) (stating Section 9.31 contains "a proportionality requirement with regard to the magnitude of force which the person is legally justified to employ").

Section 9.31(a)'s "reasonably believes" language "contains subjective and objective components." *Lozano v. State*, 636 S.W.3d 25, 32 (Tex. Crim. App. 2021). "A defendant must subjectively believe that another person used or attempted to use unlawful force . . . against the defendant and that the defendant's use of unlawful or deadly force in response was immediately necessary." *Id.* The defendant's subjective belief, however, must be "objectively reasonable." *See id.* The reasonableness of the defendant's subjective belief is measured by the objective standard of an "ordinary and prudent man." *See id.* (quoting TEX. PENAL CODE § 1.07(a)(42)); *see also* TEX. PENAL CODE § 1.07(a)(42) (defining "reasonable belief" as one held by "an ordinary and prudent man in the same circumstances as the actor").

**B. Closing Arguments**

The trial court included a self-defense instruction in the jury charge over the State's objection. During her closing argument, the State prosecutor addressed the self-defense instruction and argued that Routt did not act in self-defense when he pushed Fields to the ground, dragged her across the ground by her braids, pulled her hair with such force that he ripped one of Field's braids from her scalp, struck her in the back of the head with his revolver, and tried to run her over with his truck, because Routt's response to Fields' alleged use of unlawful force was so out of proportion that it was not reasonable to believe such a response was immediately necessary to protect Routt from Fields after she allegedly pushed him or attempted to push him. *See* TEX. PENAL CODE § 9.31(a) (stating "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force"). The prosecutor argued:

> . . . Now let's talk about why self-defense absolutely does not apply to this case. You're going to get that law, but at the end of the day it's pretty simple. Okay? So there's four things of self-defense that we have to remember. Okay? When and to the degree the defendant—he reasonably believes that immediate force is needed to overcome unlawful force. That's going to be in your jury charge. You can read it word for word. Okay?
>
> But let's talk about what each of those things mean. To the degree. Okay? The first column, when and to the degree. What does that mean? It means like for like. I go up to you and I slap you. You can slap me back. When and to the degree is like for like. Right?

11

At that point, Routt's counsel objected, "I'm going to object to that being a misapplication of the law as well, this like-to-like standard." The trial court did not expressly rule on Routt's objection. Instead, the Court instructed the jury:

> Ladies and gentlemen, the law that you will decide this case from is the law that I just read to you. What the attorneys argue at this point may or may not be the law. The law is what I read to you and your interpretation of that law.

Without further objection or request from Routt's counsel, the State continued its closing argument:

> We'll find that exact page—okay—so that you can look. And you can look at the evidence, you can look at this law, and you can see the four prongs that I was talking to you about. Okay?
>
> Upon the law of self-defense, you are instructed that a person is justified—we're saying this person is excused from their behavior, their behavior is justified—in using force against another when and to the degree he reasonably believes that force is immediately necessary to the other person's use or attempted use of unlawful force. Right?
>
> When and to the degree, like we were just talking about. It's talking about proportionality, response to force. Right? If I slap you, you can slap me back. If I push you, you can push me back. Right? That makes sense. You can defend yourself in the manner that you're met. Let's talk about what doesn't make sense.
>
> A push, a punch, a hit with a blunt object, a repeated attack. Okay? If you believe the Defense's version of this case—you saw that video. Even if you believe Kayonni Fields raised her hands first and pushed, let's just assume, believe that for a moment, okay? When and to the degree, to a push, what's an appropriate response? Maybe a push back. And then it's there.
>
> When to the degree—the Defense's theory is that Kayonni Fields was following this defendant, and, man, he was scared. Following this

12

defendant. Okay. You're being followed. Guess you can follow them back? Reciprocal force. Okay? Following, push. What's a reasonable response?

The second prong: When and to the degree. Just talking about that, the proportional first—the proportional force. If and to the degree, you need something proportional. Okay?

The next part is if he reasonably believes. Let's be so clear about this. It's not what David Routt believes. It's not what David Routt believes. Because if it was, we wouldn't need a jury. We wouldn't need a judge. We wouldn't need a criminal law system. Any defendant would reasonably believe their actions were justified, if it was. . .

Routt's counsel again objected, "I'm going to object to that being an improper misstatement of the law, as well that it's not as to what he reasonably believed. The law is clear on that." The trial court did not expressly rule on the objection. Instead, the Court instructed the jury:

Ladies and gentlemen, the law is in the Court's charge. Read the Court's charge and apply that law. Move on.

Without further objection or request from Routt's counsel, the State continued its closing argument:

It's not what the defendant believed. It's a reasonable and ordinary person in his shoes. Okay? It doesn't matter what David Routt believed. It matters what a reasonable and prudent person in his shoes would do. Okay?

So what happened? Well, it starts in the apartment, right? . . .

After summarizing what occurred in the apartment, the prosecutor argued:

And in following him, what happens? Well, if we believe the Defense's version, Kayonni Fields raises her hands like she is going to push him. How does David Routt respond? Reasonably? Well, a reasonable

13

response would be a push. A reasonable response would say, "Hey, don't put your hands on me." A reasonable response would be to leave. He didn't do those things. What did he do?

Well, after Kayonni raises her hands up to block her face, like she told us that she was doing because he had just choked her literally minutes before this happened, she raises her hands. In Defense's version, he takes a step back. Why does he take a step back? So he can swing at Kayonni because that's how you throw a punch.

He takes a step back and immediately goes after Kayonni as soon as those neighbors [who had been watching Fields and Routt] close the door. You can watch that video in the jury room. You can watch David Routt's timing as he squares up to Kayonni as soon as those neighbors leave, as soon as the coast is clear to beat his girlfriend.

David Routt squares up, takes a step back, and then proceeds to violently beat her. Okay? He grabs her arm, whips her around. She is absolutely helpless when he grabs her by the hair and throws her to the ground. You can watch the video. You can look at the stills. He raises his fists above his head. This man—you saw Kayonni Fields. You see the defendant. With his height, fists above the head, full force down to her.

Reasonable response from a push? That's not where it stops. We know that's not where it stops. We know he pistol whips her. He had a gun. It had a wooden handle. Kayonni told you about it. He hit the skull with that gun while she was on the ground. Kayonni's hands are up. He is pulling on her hair, rips her hair out.

. . .

What's the next part? The third prong: Immediately necessary to protect against unlawful force. Okay. Immediately necessary to protect against unlawful force. Well, was Kayonni using unlawful force? Push. Say Kayonni pushed first. I don't think that's what the video showed, but you can judge for yourself.  Push.  David Routt can push back.

Routt did not object to this portion of the prosecutor's closing argument.

In his closing argument, Routt's counsel responded to the prosecutor's comments regarding self-defense's proportionality requirement, stating:

> The State is telling you this—I don't know, poppycock, balderdash, let's call it BS—of if he slaps you, then you can slap back; if he pushes you, you can push back. That is not the law. It is not. It is not the law. Nowhere in here will it say you can only do tit for tat. If that was the case, think of how many people wouldn't be able, if someone says some stuff to them and then pushed them, wouldn't be able to beat them down.
>
> It is the law that you can do what's necessary to stop the threat. It doesn't say you can only stop a threat a little bit. It doesn't say if it's a woman, you have to push her and then walk away. It doesn't say that if you're a foot taller that you're not allowed to then drag them by the hair. It doesn't say any of those things. It says that you get to stop the threat by what you feel is reasonably necessary.

The State objected to defense counsel's argument as a misstatement of the law. In response, the trial court instructed the jury to "read the law in the Court's charge and apply the law as you interpret the law, the way it's written, please."

> During her rebuttal, the prosecutor argued:
>
> Self-defense. That this defendant acted reasonably. Okay? I'm going to read it again. Upon the law of self-defense, you are instructed that a person is justified—we will excuse that person's behavior—in using force against another when and to the degree. Let's talk about that again. We know it's like for like. We'll talk about it. When and to the degree he reasonably believes the force is immediately necessary to protect himself against the other person's use or attempted use of unlawful force.
>
> . . .
>
> Now let's deal with self-defense. Self-defense is us saying as a community, yeah, your behavior is okay, it's justified. It's fine. What

15

you did, it's fine. Looking at self-defense, when and to the degree. Defense said they wanted to make this simple. They didn't tell you what that meant. Slap for slap, punch for punch, like for like, reciprocal force, when and to the degree. Ladies and gentlemen of the jury, that's what it means. Was he reasonable in the force that he used? No. You know this. What was reasonable? He could have left. He's got a foot on Kayonni and a hundred pounds. You see the defendant, you see Kayonni Fields. That's not reasonable, not reciprocal force, not immediately necessary to protect against unlawful force from Kayonni Fields.

Routt did not object to these portions of the prosecutor's closing argument.

## C. Preservation

To preserve a complaint of improper jury argument, a defendant must (1) make a timely and specific objection, and (2) if the objection is sustained, the defendant must request a curative instruction, and (3) if the instruction is given, the defendant must move for a mistrial. *Cook v. State*, 858 S.W.2d 467, 473 (Tex. Crim. App. 1993); *see also* TEX. R. APP. P. 33.1(a) (stating party preserves error by making timely and specific objection and obtaining ruling, or refusal to rule); *see generally Hopper v. State*, 483 S.W.3d 235, 236–37 (Tex. App.—Fort Worth 2016, pet. ref'd) (holding defendant did not preserve challenge to improper prosecutorial argument because court sustained objection and defendant did not request instruction to disregard or move for mistrial). In other words, the defendant must urge his objection until he obtains an express or implicit adverse ruling. *See Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). The adverse ruling must be "conclusory; that is, it must be clear from the record the trial judge in fact overruled

16

the defendant's objection or otherwise error is waived." *Ramirez v. State*, 815 S.W.2d 636, 643 (Tex. Crim. App. 1991).

The parties do not address in their briefs whether Routt preserved his first issue for review. "The right to a trial untainted by improper jury argument is forfeitable." *Hernandez v. State*, 538 S.W.3d 619, 622 (Tex. Crim. App. 2018). Because "preservation of error is a systemic requirement," it "must be reviewed by the courts of appeals regardless of whether the issue is raised by the parties." *Haley v. State*, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005).

When Routt objected during closing argument to the prosecutor's argument that "when and to the degree the defendant. . . reasonably believes that immediate force is necessary" means "like for like," arguing the statement was a "misapplication of the law," the trial court did not expressly rule on the objection. Instead, the trial court gave what Routt characterizes as an "attempted curative instruction."

> Court: Ladies and gentlemen, the law that you will decide this case from is the law that I just read to you. What the attorneys argue at this point may or may not be the law. The law is what I read to you and your interpretation of that law.

Routt did not request an express ruling on his objection. And apparently satisfied with the court's instruction, he did not move for a mistrial.

A trial court implicitly sustains an objection to an improper jury argument by instructing the jury to disregard the prosecutor's statement. *See Brockway v. State*, 853 S.W.2d 174, 176 (Tex. App.—Corpus Christi–Edinburg 1993, pet. ref'd) (stating trial court "implicitly sustained the objection by instructing the jury to disregard the prosecutor's comment"); *Thomas v. State*, No. 14-18-00115-CR, 2019 WL 3227546, at *1 (Tex. App.—Houston [14th Dist.] July 18, 2019, no pet.) (mem. op., not designated for publication) (holding trial court implicitly sustained objection to improper jury argument by asking State to rephrase and instructing jury to disregard State's comment). Because in response to Routt's objection, the trial court gave what is functionally an instruction to disregard the prosecutor's statement, Routt was required to move for a mistrial and obtain an adverse ruling to preserve his complaint of improper jury argument for appellate review. *See Blondett v. State*, 921 S.W.2d 469, 474 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) (characterizing trial court's jury instruction "that what the attorneys said was not the law and that the judge would instruct them on the law of the case" as instruction to disregard improper argument). Routt did not move for a mistrial and thus he did not preserve his first issue for appellate review.

Even if we conclude the trial did not implicitly sustain Routt's objection by giving the "curative instruction," Routt still failed to obtain an adverse ruling because it is not "clear from the record the trial judge in fact *overruled* [his]

18

objection." *Ramirez*, 815 S.W.2d at 643 (emphasis added). Indeed, courts have held that similar jury instructions when made in response to an objection are not adverse rulings. *See Flores v. State*, 871 S.W.2d 714, 723 (Tex. Crim. App. 1993) (holding defendant failed to pursue his objection until adverse ruling when trial court did not respond to objection, and instead instructed jury, "what the attorneys say is not evidence. . . . You'll be guided by the instructions of the Court only"); *Binford v. State*, No. 14-06-00401-CR, 2007 WL 1215425, at *2 (Tex. App.—Houston [14th Dist.] Apr. 26, 2007, pet. ref'd) (mem. op., not designated for publication) ("The trial court's statement, 'Lawyer's arguments are not evidence, ladies and gentlemen,' is not an adverse ruling on appellant's objection."); *Handy v. State*, No. 01-03-00562-CR, 2004 WL 1516459, at *4 (Tex. App.—Houston [1st Dist.] July 8, 2004) (mem. op., not designated for publication) ("Although appellant objected to the prosecutor's statements, he failed to pursue his objection to an adverse ruling; rather, after appellant objected, the trial court instructed the jury that '[t]he lawyers' arguments are not evidence, ladies and gentlemen.'"), *aff'd on other grounds*, 189 S.W.3d 296 (Tex. Crim. App. 2006).

Routt did not move for a mistrial after the trial court instructed the jury that "the law that you will decide this case from is the law that I just read to you" and that the attorneys' arguments "may or may not be the law." Nor did he seek an express ruling on his objection. He thus failed, as required, to pursue his objection

to the prosecutor's argument until obtaining an adverse ruling. *See Archie*, 221 S.W.3d at 699 ("To preserve error in prosecutorial argument, a defendant must pursue to an adverse ruling his objections to jury argument."); *Hopper*, 483 S.W.3d at 236–37 (holding defendant did not preserve challenge to improper prosecutorial argument because court sustained objection and defendant did not request instruction to disregard or move for mistrial).[5] Without an adverse ruling, nothing is preserved for our review. *See Flores*, 871 S.W.2d at 723; *see also Handy*, 2004 WL 1516459 at *4 ("When an adverse ruling is not obtained, nothing is preserved for review.").

## D.     Harmless Error

In their briefs, the parties treat the trial court's statements to the jury as an implicit overruling of Routt's objection to the prosecutor's statement that "when and to the degree" means "like for like." Even if we conclude that the trial court overruled Routt's objection and abused its discretion in doing so, we cannot reverse on this basis unless Routt was harmed by the error. *See Freeman v. State*, 340

---

[5]     On appeal, Routt argues the trial court's statement that, "What the attorneys argue at this point may or may not be the law," was an "endorsement of the prosecutor's misstatement." To the extent Routt is challenging the adequacy of the trial court's instruction to cure the allegedly erroneous jury argument, Routt cannot do so on appeal because he did not move for a mistrial. *See Hernandez v. State*, 538 S.W.3d 619, 622–23 (Tex. Crim. App. 2018) (stating to preserve claim instruction to disregard was inadequate, defendant must object and pursue his objection to adverse ruling); *see also Estrada v. State*, 313 S.W.3d 274, 303 (Tex. Crim. App. 2010) (stating even assuming prosecutor's argument was so egregious that instruction to disregard would be ineffectual, defendant "should have moved for a mistrial to preserve this error").

S.W.3d 717, 728 (Tex. Crim. App. 2011) (stating "[i]mproper-argument error of this type is non-constitutional in nature"); TEX. R. APP. P. 44.2(b) (setting forth standards for non-constitutional harm).

A harmful error is one that affects the defendant's substantial rights. *See Freeman*, 340 S.W.3d at 728; TEX. R. APP. P. 44.2(b) ("Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."). If a defendant does not object each time the prosecutor makes the same or a similar improper jury argument, any error in allowing the argument is harmless. *See Howard v. State*, 153 S.W.3d 382, 384–85 (Tex. Crim. App. 2004); *see also Gomez v. State*, No. 07-22-00010-CR, 2023 WL 4983306, at *5 (Tex. App.—Amarillo Aug. 3, 2023, no pet. h.) (mem. op., not designated for publication) ("Because elsewhere the prosecutor made the same or similar arguments without objection, any error in the trial court's ruling was harmless."); *Myles v. State*, No. 01-11-00188-CR, 2012 WL 2357426, *5 (Tex. App.—Houston [1st Dist.] June 21, 2012, pet. ref'd) (mem. op., not designated for publication) ("Even if a defendant objects to an improper argument once, failure to object to other instances of the same or similar arguments will result in an appellate court finding that the trial court's error, if any, in failing to sustain the objection is harmless.").

The record reflects that although Routt objected the first time the State prosecutor characterized the proportionality requirement in the self-defense statute

as "like for like," the prosecutor made other similar statements without objection during her closing argument, describing the degree of reasonable force as "like for like," and a "[s]lap for slap, punch for punch." Thus, even if Routt had preserved his challenge to the prosecutor's allegedly improper jury argument, we cannot reverse on this basis because Routt, who did not request or obtain a running objection, did not object to the prosecutor's other similar remarks.[6] *See Howard*, 153 S.W.3d at 384–85 (holding any error in trial court's ruling of defendant's objection to improper jury argument was harmless because defendant did not object when prosecutor made similar statements); *see also Gomez*, 2023 WL 4983306 at *5 (same); *Myles*, 2012 WL 2357426 at *5 (same).

We overrule Routt's first issue.

---

[6] To the extent Routt complains about the prosecutor's other remarks during closing argument regarding the law of self-defense and its proportionality requirement, Routt failed to preserve this issue for our review. "A defendant must object each time an improper argument is made, or he waives his complaint, regardless of how egregious the argument." *Temple v. State*, 342 S.W.3d 572, 605 (Tex. App.—Houston [14th Dist.] 2010), *aff'd*, 390 S.W.3d 341 (Tex. Crim. App. 2013). Because Routt did not object to the prosecutor's other remarks concerning the law of self-defense, he waived any complaint as to those remarks on appeal. *See Threadgill v. State*, 146 S.W.3d 654, 667 (Tex. Crim. App. 2004) (holding defendant failed to preserve error by not objecting to prosecutor's argument); *see also Hopper v. State*, 483 S.W.3d 235, 236–37 (Tex. App.—Fort Worth 2016, pet. ref'd) ("[Defendant] did not object to the second argument and, therefore, forfeited any error arising from this argument by the prosecutor.").

**Judicial Bias in Sentencing**

In his second issue, Routt argues the trial judge was biased against him during sentencing. According to Routt, the trial judge's statements during the sentencing hearing demonstrate the judge failed to consider the full range of punishment and refused to consider all the evidence at punishment in deprivation of his right to Due Process under the 14th Amendment of the United States Constitution.

**A.     Standard of Review**

A defendant has a due process right to a neutral and detached hearing body or officer. *See Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973)). A defendant is denied due process when a trial judge refuses to consider the evidence, arbitrarily refuses to consider the entire range of punishment, or imposes a predetermined sentence. *Jaenicke v. State*, 109 S.W.3d 793, 796 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd); *Buerger v. State*, 60 S.W.3d 358, 364 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) ("A trial court denies due process where it arbitrarily refuses to consider the entire range of punishment for an offense or refuses to consider mitigating evidence and imposes a predetermined punishment."). When a claim of judicial bias is raised, we review the entire record to determine whether the judge's bias or prejudice denied the defendant due process. *See Dockstader v. State*, 233 S.W.3d 98, 108 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). Absent a clear showing of bias in the record,

we presume the trial judge was neutral and unbiased in the execution of its judicial duties. *See Brumit*, 206 S.W.3d at 645; *see also Jaenicke*, 109 S.W.3d at 796.

## B.    Sentencing

During the sentencing portion of the punishment hearing, the trial judge stated:

> But I take my responsibility as a judge a little bit more serious than that, because I think you're entitled to know from me, man to man, face to face, what I'm basing my decision on.
>
> . . .
>
> So, anyway, what I'm trying to get to you is that's one of the things that's outstanding in my mind in trying to make the serious decision that I have to make about the rest of your life. Criminal history, that tells me so much about you. That tells me that I'm not dealing with someone who has just acted outside the law, made a mistake. That tells me I'm dealing with someone that is a criminal, someone who has a criminal mindset.
>
> You've got 13 convictions. And if that ain't a criminal mindset, I don't know what a criminal mindset is.
>
> . . .
>
> Now we get to the real serious stuff. Now we get to the violent nature that you have. January 2018, you're convicted of assault-family violence. Punishment, nine days in jail. Nine days in jail. And I don't know what the facts were with regard to that family violence; but it was a felony, which means that you had to do it one time before for it to be a felony. Nine days in jail.
>
> And I'm going to really—I'm going to jump across these because six months later, you're doing it again with Ms. Fields. It really got serious with her. I saw the video. My eyes did not lie about what you did to her. Your lawyer did a good job of putting a spin on it that you were defending yourself in some way, but anybody with any common sense

looking at that video would tell that you were not defending yourself. You could have killed that woman.

You threw her to the ground by her hair, and you were beating her over her head. You're lucky you're not being charged with murder. That's a violent crime. So there's two violent crimes right there. You got nine days for one, and then I'm about to sentence you for the one that you did six months later. And I'm going to talk about that in a minute.

After discussing Routt's prior conviction for burglary of a motor vehicle, the trial judge stated:

And then we go to just a couple of weeks ago, the assault-family violence. It happened on July 30th, 2018, as I say, six months, approximately, after the first one. I don't know if it's the same woman or not. I never heard any evidence about that. It don't make any difference whether it was the same woman or not, in my view.

Anybody that would pummel a woman the way I saw it on that video does not deserve any mercy. The mercy you got from that event came from God because you didn't kill her. Otherwise, we would have a whole different situation here. I don't know whether that ever crossed your mind or not.

Obviously it didn't because you continued to pursue [Fields] and continued to harass her, continued to threaten to kill her for some months after that, even when you're out on bond, even when you were under the rules of the judge that says don't go around her. You just gave the judge your middle finger and did what you wanted to do. Now, that's totally unacceptable. That's not a redeemable quality in my view.

I know your family loves you, and I know they hate to see you where you are. You are punishing your family by the way you've been acting. They are hurting more than you are. You're going to go and you're going to serve your time. They're going to be here at home knowing that their loved one is in the penitentiary for a substantial length of time because, my friend, you're going to be an old man when you get out of the penitentiary when I get through here.

. . .

25

So that's what's important to me in trying to determine what someone's sentence should be. Consequences. I'll tell you what. I grew up with consequences. If I got in trouble, did something I shouldn't have— shouldn't have done when I was a kid, I got my butt whipped and I knew not to do it again. If I did it again, I was going to get whipped harder; and I knew that. I don't think you know that.

The system has tried to whip you, and you've resisted it. From your record here, it's clear to me that you have absolutely no respect for authority. You have no respect for women, obviously. You've got no respect for the law. So you're an outlaw. You're a criminal. I'm going to tell you that straight out. You're the only one that's going to be able to convince anyone in the future that you're not.

. . .

I didn't really need those unadjudicated offenses or the extraneous offenses that they tried to put on. I didn't need that to assess punishment in this case. I heard it. But I don't want you to think that that's why I'm assessing the punishment that I'm going to assess. It had no bearing at all on this because I had enough right here to tell me who I'm dealing with. (*indicating*).

. . .

I am going to find the—the enhancement paragraphs in the indictment true, both of them true. I'm pronouncing you, as I've done before, guilty of the offense of assault-family violence as alleged in the indictment. There's going to be a finding of a deadly weapon in the judgment and sentence as well. There will be a finding of family violence as well. And I'm going to tell you something. You need to thank these ladies over here because I was seriously thinking about a life sentence for you. They asked for 50, and that's what I'm going to do. I'm going to assess your punishment at 50 years confinement, TDC-J Institutional Division.

## C.    Analysis

Routt argues the trial judge "disregarded legitimate punishment evidence and

based his sentencing decision solely on [Routt's] criminal history [and] then

arbitrarily sentenced [Routt] to fifty years based only on the whim of the prosecutor's request." According to Routt, "the trial court's disregard for punishment evidence and arbitrary formula of relying on the State's request in this matter is analogous" to the trial court's actions in *Hernandez v. State*, 268 S.W.3d 176 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.).  Routt's reliance on *Hernandez* is misplaced.

In *Hernandez*, the trial judge "explicitly informed Hernandez [before trial] of its intent to assess punishment by doubling Hernandez's highest, previously imposed sentence." *Id.* at 182.  The trial judge reiterated its intent to follow its "tradition of doubling a defendant's previous sentence" when it told Hernandez to "[a]sk the other prisoners in jail, they will tell you." *Id.*  The court of appeals observed that "the trial court's imposition of a twenty-four year sentence conforms with its stated policy of doubling a defendant's highest, previously imposed sentence, which for Hernandez was twelve years." *Id.*  Based on these statements, the court held "it is clear that the trial court arrived at Hernandez's punishment by relying on an arbitrary mathematical formula, rather than a careful and fair consideration of the evidence relevant to punishment" and thus there was sufficient evidence to overcome the presumption the trial judge had acted as a neutral and detached officer when assessing Hernandez's punishment. *Id.*

Unlike in *Hernandez*, there is no indication in the record the trial judge predetermined Routt's punishment or used an "arbitrary mathematical formula" to

27

determine Routt's sentence. Although the trial judge relied in part on the State's punishment recommendation, there is no indication in the record that the trial judge based his decision exclusively on the State's recommendation or that the judge had an established practice of assessing a defendant's punishment in accordance with the State's recommendation. Routt has not directed us to, and we have not found, any authority supporting the proposition that a trial judge demonstrates bias against a defendant when it relies in part on the State's punishment recommendation when assessing a defendant's sentence.

Routt also argues that the trial judge "explained that his decision was not based on any of the evidence presented but was based solely on [Routt's] history of convictions" by stating:

> I didn't really need those unadjudicated offenses or the extraneous offenses that they tried to put on. I didn't need that to assess punishment in this case. I heard it. But I don't want you to think that that's why I'm assessing the punishment that I'm going to assess. It had no bearing at all on this because I had enough right here to tell me who I'm dealing with. (*indicating*).

During the punishment hearing, the State presented evidence of Routt's extensive criminal history, including his thirteen prior convictions, as well as evidence Routt had violated the conditions of his bond and a protective order by repeatedly threatening Fields and going to her apartment and place of business. Contrary to Routt's argument, the record does not demonstrate the trial court refused to consider the State's evidence of Routt's "unadjudicated offenses or the extraneous offenses,"

or the mitigating evidence about which Routt's mother and daughter testified. Rather, the trial judge discussed the evidence of Routt's "unadjudicated offenses or the extraneous offenses," and stated that he did not "need" that evidence to assess Routt's punishment because the evidence of Routt's thirteen convictions was "enough right here to tell me who I'm dealing with."

Furthermore, unlike in *Hernandez*, nothing in the trial judge's statements indicates the judge failed to consider the full range of punishment of twenty-years to life imprisonment in Routt's case. *See Brumit*, 206 S.W.3d at 645; TEX. PENAL CODE § 12.42(d) (stating punishment range for felony offense is twenty-years' incarceration to life imprisonment if "defendant has previously been finally convicted of two felony offenses"); *id.* § 22.01(b)(2)(A) (elevating class A misdemeanor offense of assault to third-degree felony). On the contrary, the trial court stated that although he "was seriously thinking about a life sentence," he would instead assess Routt's punishment at fifty years' incarceration, which is the *lesser* sentence recommended by the State. We fail to see how a trial judge's alleged rejection of evidence of a defendant's unlawful conduct—unadjudicated offenses or extraneous offenses—and decision to assess a defendant a lesser punishment based in part on the State's recommendation demonstrates a bias *against* the defendant. *See Brumit*, 206 S.W.3d at 645 (stating appellate courts presume trial judge was neutral and impartial unless record contains clear showing of bias).

29

After reviewing the entire record, including the trial judge's statements during the punishment hearing, we cannot say the record clearly shows the trial judge was biased or impartial in his assessment of Routt's punishment. *See id.*; *see also Dockstader*, 233 S.W.3d at 108 (reviewing entire record to determine whether judge's bias or prejudice denied defendant due process).

We overrule Routt's second issue.

## Conclusion

We affirm the trial court's judgment.


Veronica Rivas-Molloy
Justice


Panel consists of Justices Goodman, Rivas-Molloy, and Guerra.

Do Not Publish. TEX. R. APP. P. 47.2(b).